IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY L. CALEF,

        Plaintiff,

V.                                        CIVIL ACTION NO: 1:06-CV-47

FEDEX GROUND PACKAGE SYSTEM, INC.

        Defendant.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION TO COMPEL THE DEFENDANT FEDEX TO
RESPOND FULLY, COMPLETELY AND HONESTLY TO
PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

I. PROCEDURAL HISTORY

Plaintiff, Tammy L. Calef, has moved this Court to compel the Defendant, FedEx Ground Package System, Inc. (FedEx). This memorandum of law is filed by Ms. Calef, in support of said motion.

Plaintiff, Tammy L. Calef, commenced the instant cause of action against the Defendant FedEx, on February 17, 2006, when she filed her Complaint in the Harrison County, West Virginia, Circuit Court. The Defendant FedEx, thereafter, removed Ms. Calef's Complaint through invocation of this Court's diversity jurisdiction.

Ms. Calef's Complaint is grounded solely within the West Virginia Human Rights Act and is premised upon the Defendant's refusal to permit Ms. Calef to continue in her position as a Package and Delivery Service Manager, after she sustained an injury which limited her to lifting no more than 20 pounds. More particularly, rather than accommodating the mere 5-pound reduction in the functional capacity requirement (25 pounds) of the position (a requirement not among the

detailed essential functions articulated within the FedEx job description) the Defendant, on February 24, 2004, through its Regional Human Resource Director, Steve Hickman, instructed Ms. Calef to commence a period of disability. Based upon these facts and others, Ms. Calef's Complaint asserts that the Defendant FedEx illegally discriminated against her on the basis of disability and/or sex.

On May 1, 2006, the Defendant served Ms. Calef with its First Set of Interrogatories and Requests for Production of Documents. Ms. Calef timely responded to these discovery requests, on May 31, 2006, and produced 778 pages of documentation: approximately 296 pages of medical records; approximately 24 pages of requests for employment/accommodation with FedEx; the Hartford Insurance Disability claim file containing 423 pages; as well as, social security documents, job search documents, resumes, earnings records, tax documents, and other sundry requested documentation.

On May 4, 2006, Ms. Calef served the Defendant FedEx, *by facsimile*, with her First Requests for Admissions (*See* Ex. A - Certificate of Service), along with her First Requests for Production of Documents. Ex. B. On June 2, 2006, the Defendant FedEx timely responded to Ms. Calef's Requests for Admission. *See* Ex. C - Certificate of Service.

The Defendant **did not**, on June 2, 2006, respond to Ms. Calef's simultaneously served production request. However, as the thirty-day deadline for responding to the production request fell on Saturday, June 3, 2006, pursuant to F.R.Civ.P., Rule 6(a), the response need not technically have been served until Monday, June 5, 2006.

The Defendant, FedEx, **did not** serve its response to Ms. Calef's First Request for Production of Documents on June 5, 2006. **Nor** did the Defendant seek, on or before June 5,

2

2006, an extension of time within which it might respond to the requested production.

Instead, on June 8, 2006, some six days after serving its answers to Ms. Calef's simultaneously served Requests for Admission, and some three days after expiration of the procedurally extended time for response to the production request, counsel for FedEx (Christina Kepplinger) for the *first time* telephoned undersigned counsel's office and requested an extension of time within which to respond to Ms. Calef's First Requests for Production of Documents. Ex. D.

As undersigned counsel was working outside of the office at the time of defense counsel's call, she dictated a response to defense counsel's request. This correspondence was forwarded to defense counsel by facsimile, on June 8, 2006 at 1:03 p.m. Ex. E. In this letter, undersigned counsel explained that she was willing to accommodate the Defendant by allowing additional time, the requested seven more days, for actual production of the requested documents. ***However, undersigned counsel also explained that as the requested extension of time came well after the procedural deadline for the FedEx discovery response, "I am unwilling to grant an extension in relation to any objections that FedEx might have to the requested production," as all such objections were necessarily waived.*** Ex. E.

On June 8, 2006 at 7:02 p.m., Defendant FedEx served a facsimile response to Ms. Calef's First Requests for Production of Documents. Ex. F. Although clearly waived under both the Federal and Local Rules of Civil Procedure, the Defendant objected to and/or refused to produce complete responses to 14 of the 22 Requests for Production made: 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 17, 18, & 19. Ex. F. The various objections raised included, "over broad," "highly confidential and personal information," "not relevant," "attorney-client privilege," "work product

3

rule," and "vague." Ex. F.

Furthermore, although the Defendant's untimely June 8, 2006 faxed "response" to Ms. Calef's First Requests for Production of Documents included references to "attached exhibits," no such exhibits were provided in the facsimile, in direct contravention of L.R. Gen. P., Rule 5.02 (the faxed document must be a fax of the original in its entirety, including any exhibits and attachments thereto). In addition, "the response" did not include any provision for inspection and copying of the exhibits. Furthermore, no "privilege log" was included in connection with those responses to which objection was made on the basis of attorney-client privilege and/or work product.

Accompanying "the response" was correspondence from defense counsel. Ex. G. In this June 8, 2006 letter, defense counsel opined that "contrary to your assertion, any belief, on Plaintiff's part, that Defendant's request for an extension came 'well after the date on which the responses were due by any calculation' is unfounded." Ex. G. In addition, in this letter, defense counsel proclaimed "furthermore, good cause exists to establish that Defendant did not waive its objections." Ex. G.

Undersigned counsel received the hard copy of the Defendant's "response," on or about Monday, June 12, 2006. This copy, like the facsimile version, was devoid of the exhibits purportedly attached to "the response." Also, on June 12, 2006 at 4:33 p.m., undersigned counsel received correspondence from defense counsel advising that the documents in response to Ms. Calef's First Requests for Production of Documents were available for inspection and copying at her firm's Morgantown, West Virginia office. Alternatively, undersigned counsel was advised that she could remit payment in the amount of $112.47 to defense counsel's firm as satisfaction of copying costs incurred at the rate of $0.23 per page. Ex. H. Undersigned counsel contacted the

4

Morgantown, West Virginia branch of defense counsel's firm, on June 13, 2006, and made arrangements to inspect and copy the discovery documents, on June 15, 2006.

On June 13, 2006 at 3:10 p.m., undersigned counsel forwarded a letter to defense counsel in reference to defense counsel's June 8, 2006 correspondence. In this letter, undersigned counsel asked that defense counsel "please immediately provide a detailed factual explanation in support of your assertion that 'good cause exists to establish that Defendant did not waive its objection.'" Ex. I. This request for a factual basis of the "good cause" assertion was made in an attempt to resolve the instant discovery dispute without resort to this Court. Defense counsel did not respond to this letter.

In a second attempt to amicably resolve the instant discovery dispute, undersigned counsel telephoned defense counsel, on June 19, 2006. In the course of this phone conversation, counsel discussed Defendant's untimely response to the production request, defense counsel's assertion of the "good cause" purported to render the requested extension and subsequent response seasonable, the need for a proper privilege log in connection with any claim of privilege, the Defendant's claimed need for an "Agreed Protective Order" in connection with Ms. Calef's request for comparitor employment files (despite the fact that all discovery requests, related to the same, instructed the Defendant to redact identifying information), as well as, the Defendant's assertion that all documents relevant to Ms. Calef's claim had been produced.

Moreover, during the course of this phone conversation, undersigned counsel advised defense counsel that she would be out of the office, in connection with the National Employment Lawyer's Association Annual Convention, from June 21, 2006 thru July 3, 2006. Accordingly, as the Local Rules provide only a 30-day limit within which to bring a motion to compel, it would be

necessary for any agreement reached to be fully effectuated well in advance of July 3, 2006.

At the end of the June 19, 2006 telephone conversation, it was undersigned counsel's understanding that the instant discovery dispute had been resolved, barring some objection to any claimed privilege that might be set forth within the anticipated privilege log. Accordingly, before her departure, she dictated correspondence to defense counsel memorializing the resolution reached in the course of the telephone conversation. This letter was mailed to defense counsel by undersigned counsel's office, on June 22, 2006. Ex. J.

In this June 22, 2006 letter, undersigned counsel reiterated defense counsel's "good cause" assertion, to wit: (1) the timely responses to requests for admission were fewer in number than the requests for production; (2) defense counsel called on June 8, 2006 to request an extension of time to respond to the Requests for Production; and (3) the time beyond the deadline for responding to the Requests for Production was minimal. Also in this letter, undersigned counsel set forth the two major provisions of the agreement reached: (1) defense counsel would provide undersigned counsel, "in the immediate future, and certainly well in advance of July 3, 2006, a privilege log, compiled in compliance with Federal Rules of Civil Procedure [sic] [Local Rules of Civil Procedure] 26.04(a)(2)(ii)(I) and (II)(c), documenting all privileges claimed in connection with the request for production"; and, (2) defense counsel would "prepare and forward to me, very promptly, an 'Agreed Protective Order'" so as to permit production of documents in response to Requests Number 17, 18, and 19. Ex. J. Defense counsel never responded to this letter.

During her time in San Francisco, undersigned counsel was able, sporadically, to communicate with her office by E-mail. In one such communication, on June 28, 2006, undersigned counsel learned that defense counsel had yet to forward either the promised privilege

6

log or protective order. Accordingly, undersigned counsel E-mailed her office attaching correspondence to defense counsel. The office then forwarded this letter by facsimile, on June 29, 2006, at 8:31 a.m. Ex. K.

In this letter, undesigned counsel expressed her dismay at learning that defense counsel had made no effort to comply with the agreements reached during the course of the June 19, 2006 telephone conversation. Accordingly, undersigned counsel advised that if compliance was not made on or before June 30, 2006, she would move to compel production and in so doing would take the position that any objection raised by the Defendant had been waived. Ex. K.

On June 29, 2006 at 5:26 p.m., defense counsel faxed correspondence in which she proclaimed that "contrary to the assertion in your letter *we did not reach an agreement* during our telephone conversation on June 19, 2006." (Emphasis added) Ex. L. Attached to this letter was a privilege log. The attached privilege log asserts attorney-client privilege in connection with 11 entries encompassing 20 documentary pages. Ex. M. Facially, at least one of these documents involves no communication with counsel. Another claims privilege in connection with facially unprivileged attachment documents, and at least four entries temporally have the appearance of investigative reports not within the scope of the attorney-client privilege. *See* State *ex rel.* United Hospital Center, Inc. V. Bedell, 484 S.E.2d 199 (W.Va. 1997).

Moreover, instead of providing the promised "Agreed Protective Order" in connection with Requests Number 17, 18, and 19, attached to the June 29, 2006 letter was "Defendant's Supplemental Answers to Plaintiff's First Requests for Production of Documents." This amended response to Ms. Calef's Requests for Production Number 17, 18, and 19, provides no documentation, and asserts the following:

**REQUEST FOR PRODUCTION NO. 17:** Please produce the human resource and/or personnel files of all FedEx employees within the "Ohio Valley Region" who have requested reasonable accommodation of a disability in connection with their performance of job duties as FedEx Employees. In producing these files, please redact the name, address, phone number, social security numbers and other identifying information so as to preserve the privacy of the FedEx employees involved. However, in producing the files, please be certain to include the sex, job title, job description, job location and nature of disability for each individual employee.

**RESPONSE:** *After reasonable investigation, Defendant is not aware of any employee with the Ohio Valley region who requested a reasonable accommodation.*

**REQUEST FOR PRODUCTION NO. 18:** If not included within the human resource/personnel files produced above in response to Request No. 17, please produce the human resource and/or personnel files of all FedEx employees within the "Ohio Valley Region" who have requested reasonable accommodation of a disability and in connection with their performance of job duties as FedEx employees and been denied. In producing these files, please redact the name, address, phone number, social security numbers and other identifying information so as to preserve the privacy of the FedEx employees involved. However, in producing the files, please be certain to include the sex, job title, job description, job location and nature of disability for each individual employee.

**RESPONSE:** Defendant incorporates by reference its response to Request for Production No. 17.

**REQUEST FOR PRODUCTION NO. 19:** If not included within the human resource/personnel files produced above in response to Requests No. 17 and 18, please produce any "Employer's Statement" completed in connection with any Application for Long term Disability Income Benefits for any employee whose human resource/personnel file was produced in response to Requests No. 17 and 18, above.

**RESPONSE:** Defendant incorporates by reference its response to Request for Production No. 17 and 18.

(Emphasis added) Ex. N.

On June 29, 2006 at 4:00 p.m., defense counsel for the *first time* raised complaint in relation to Ms. Calef's May 31, 2006 responses to the Defendant's discovery requests. In a phone

8

message left with undersigned counsel's office, defense counsel maintained that undersigned counsel needed to "talk w/her re: II's answers. Georgia listed objections - wants to discuss before filing motion to compel." Ex. O. Less than two hours later, defense counsel forwarded a faxed letter advising of the following:

> Defendant has not received full and complete responses to Interrogatories 4 and 5 and Document requests 19 and 19 of Defendant's First Set of Interrogatories and requests for Production of Documents. Plaintiff objected to each of these requests. Defendant believes that this information is clearly relevant to claims and defenses of the parties.
>
> ***In an effort to meet and confer, as required by the Rules of Civil Procedure***, I telephoned your office today and left a message with your secretary but you were out of the office. Please contact me to discuss these discovery requests or I will be forced to file a Motion to Compel.

(Emphasis added) Ex. P. Of course, this twelfth hour demand to meet and confer was made by defense counsel with full knowledge that undersigned counsel was in San Francisco.

On June 30, 2006 at 12:30 p.m., defense counsel again placed a call to undersigned counsel's office. On this occasion she advised the office secretary that if she did not hear from undersigned counsel before the end of the day she would have no other choice but to file a Motion to Compel.

At 4:46 p.m. defense counsel filed and served the "Defendant's First Motion to Compel Discovery." Ex. Q. Accordingly, defense counsel's "effort to meet and confer, as required by the Rules of Civil Procedure" ***to resolve the discovery dispute raised, for the first time, 29 days after service of Ms. Calef's discovery responses were timely served, were carried out over a mere 24 hours and 46 minutes, during a time in which defense counsel knew that undersigned counsel was out of the office and in San Francisco***. Defense counsel, nonetheless, asserts the following

in a "Certification of Counsel" attached to the Defendant's Motion to Compel:

> I hereby certify that, in accordance with Federal Rule of Civil Procedure 37 and Local rule 37.02 that counsel for Defendant made a *good faith* effort to attempt to meet and confer with counsel for Plaintiff by telephone prior to the filing of this Motion to Compel.

(Emphasis added) Ex. Q. Under the circumstances, it is not unreasonable to conclude that defense counsel's belatedly created dispute in relation to Ms. Calef's discovery responses has, at the very least, the appearance of bald retaliatory gamesmanship.

## II. ARGUMENT

### A. The Defendant's Belated Objections to Ms. Calef's Discovery Requests Were Waived.

The Local Rules for the United States District Court for the Northern District of West Virginia establish that objections to requests for production not made within 30 days of service are unequivocally waived.

> Objections to Document Requests. — (1) When an objection is made to any document request or subpart, it shall state with specificity all grounds for the objection. *Any ground not stated in an objection within the time provided by the Fed. R. Civ. P. 34, or within any extension of time, is waived.*

(Emphasis added) LR Civ P 34.01(b). Furthermore, and more generally, the Local Rules provide that objections to discovery requests must be filed within 30 days of service or they are waived in the absence of a showing of good cause.

> Objections to Disclosures or Discovery. — (1) Waiver. — *Objections* to disclosures or discovery that are *not filed within the response time allowed* by the Federal rules of Civil Procedure, the scheduling order(s), or stipulation of the parties pursuant to Fed. R. Civ. P. 29, whichever governs, *are waived unless otherwise ordered for good cause shown.*

LR Civ. P. 26.04(a); *see also* Essex Insurance Company v. Neely, __F.R.D.__ 2006 WL 898107 (N.D.W.V. 2006).

10

In the case, *subjudice*, there is no dispute but that the objections raised by the Defendant FedEx to Ms. Calef's documentary requests were untimely, as the Defendant's (incomplete) response was not made until June 8, 2006, three days after the procedurally extended time for production had expired. Therefore, pursuant to LR Civ. P., Rules 34.01 and 26.04(a), the Defendant must necessarily respond to each and every one of Ms. Calef's First Requests for Production of Documents, its objections notwithstanding. Furthermore, assuming *arguendo* application of the "good cause" provision of LR Civ. P., Rule 26.04, Defendant has, nonetheless, waived any objection it might have to the requested production.

As noted, *supra*, the only excuses articulated by defense counsel for the Defendant's untimely response to Ms. Calef's production requests are as follows: (1) the timely responses to requests for admission were fewer in number than the requests for production; (2) defense counsel called on June 8, 2006 to request an extension of time to respond to the Requests for Production; and (3) the time beyond the deadline for responding to the Requests for Production was minimal. These articulated "rationales" for the belated discovery response and concomitant, untimely, raised objections cannot possibly satisfy the "good cause" exception to waiver found within the Local Rules. Thus, the Defendant FedEx has waived any objection it might have to production of the requested documents and should be compelled to answer Plaintiff's First Request for Production of Documents fully, completely, and honestly, its objections notwithstanding.

**B. Assuming *Arguendo* Defendant's Objections Were Not Waived, This Court Ought to Review *In Camera* All Those Documents for which a Claim of Privilege is Made.**

In the event this Court should determine that the Defendant FedEx did not waive any objection it might have to production of the requested documents, then it should, nonetheless,

11

review the documents included within the FedEx Privilege Log so as to determine whether the claimed attorney-client privilege in relation to each document has been properly asserted.

The party asserting attorney-client privilege has the burden of establishing each of the following factors: "both parties [to the communication] must contemplate that the attorney-client privilege does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be [intended] to be confidential." Syl pt. 6 & 3, State *ex rel.* United Hospital Center, Inc. v. Bedell, 484 S.E.2d 199 (W.Va. 1997).[1]

The Privilege Log produced by the Defendant includes a document described as "Steve Hickman handwritten note re: lawsuit." This document is located at "Bates Label" "PRIV - FXG/Calef002." Mr. Hickman is a FedEx Regional Human Resource Director. Mr. Hickman is not an attorney. Moreover, the description of the document does not reference any communication between Mr. Hickman and an attorney. Accordingly, as there is no communication with an attorney, privileged or otherwise, non-production of this document on a claim of attorney-client privilege is facially erroneous as the Defendant FedEx has failed to establish one of the essential elements of the claim - namely a communication. Therefore, this Court should direct the Defendant to produce Mr. Hickman's handwritten note. Alternatively, this Court should review the document "PRIV-FXG/Calef002," *in camera*, so as to determine whether said document satisfies all requisite Bedell elements for invocation of the attorney-client privilege.

The Privilege Log produced by the Defendant also lists two E-mails authored by Steve

---

[1] "In a diversity case federal courts apply federal law to resolve work-product privilege claims and state law to resolve attorney-client privilege claims." Nicholas v. Bituminous Casualty Corp., 235 F.R.D. 325, 329, n.2 (N.D.W.V. 2006).

Hickman to a FedEx corporate lawyer (Stacey Heitzenrater). These two E-mails were created by Mr. Hickman on February 23, 2004 and February 24, 2004 and are identified respectively as PRIV–FXG/Calef003 and PRIV–FXG/Calef004-PRIV–FXG/Calef005. As noted, *supra*, the Defendant, on February 24, 2004, through its Regional Human Resource Director, Steve Hickman, instructed Ms. Calef to commence a period of disability rather than provide her with reasonable accommodation in relation to the limitation placed upon her functional capacity, i.e., lifting no more than 20 pounds. Given the close temporal proximity to Ms. Calef's placement on disability by the Regional Human Resource Director, it would appear that the E-mails to the FedEx corporate lawyer were not forwarded to her in her capacity as a legal advisor. *See* Syl. pt 6, Bedell, 484 S.E.2 at 203; *see also* Franklin D. Cleckley, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS §5-4(E)(2)(c). Rather, the temporality of the E-mails to the employment action at issue is indicative of the lawyer's performance in the ordinary course of FedEx business. This conclusion is further supported by the fact that the February 24, 2004 E-mail was forwarded to Lynn Angstadt, another member of the FedEx Human Resource Department, in addition to the corporate lawyer.[2] Therefore, this Court should review the documents at issue so as to determine whether the documents are truly exempt from discovery on the claimed privilege.

Moreover, assuming *arguendo* that the claimed privilege attaches to the February 24, 2006 E-mail from Steve Hickman to Lynn Angstadt and Stacey Heitzenrater (PRIV–FXG/Calef 004-

---

[2]Alternatively, this Court should analyze these documents, as well as all of the remaining documents identified within the Privilege Log, under the control group test limiting application of the attorney-client privilege to communications had between corporate lawyers and high level corporate decision makers such as Board of Director members as the West Virginia Supreme Court is most likely to adopt this theory. *See* Franklin D. Cleckley, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS §5-4(E)(4)(a).

005) the attached undated Reasonable Accommodation Checklist would nonetheless be discoverable. The document is nonetheless discoverable because "if the client could not prevent production of documents in her possession, the lawyer could not claim the attorney-client privilege as a bar to production of the documents." Cleckley, *supra*, at §5-4(E)(2)(b). Therefore, this Court should direct the Defendant to produce the undated Reasonable Accommodation Checklist. Alternatively, this Court should review the undated Reasonable Accommodation Checklist *in camera*, so as to determine whether said document satisfies all requisite Bedell elements for invocation of the attorney-client privilege.

Similarly, the communication identified as PRIV–FXG/Calef014-020, which includes documents from Allen Brown to Steve Hickman, are not by the mere virtue of being forwarded by an attorney, attorney-client privileged. If the documents were not drafted by the FedEx lawyer (and presumptively they were not as there is no work-product assertion) then they are facially discoverable. Therefore, this Court should direct the Defendant to produce the documents included within PRIV–FXG/Calef014-020. Alternatively, this Court should review said documents *in camera*, so as to determine whether each document satisfies all requisite Bedell elements for invocation of the attorney-client privilege.

As for the E-mails between Carolyn Lyle and two FedEx lawyers – PRIV-FXG/Calef 006-009, Ms. Lyle was formerly employed by the Defendant in its Office of Diversity. Personnel in this office determine whether FedEx is comporting with the dictates of the various anti-discrimination statutes guaranteeing equal employment opportunity to protected classes, e.g, Title VII, ADA, etc. Thus, it would appear, facially, that the E-mail communications between Ms. Lyle and the two FedEx lawyers were not made in the lawyers' capacities as legal advisors. Rather, given Ms.

Lyle's responsibilities, it would appear that the E-mails were sent in the ordinary course of FedEx business. Therefore, this Court should review the documents at issue so as to determine whether the documents are truly exempt from discovery on the claimed privilege.

As for the remaining documents PRIV-FXG/Calef 001, 010, 011, 012, 016, this Court ought to review the documents *in camera*. Given the number of documents for which the privilege may have been improperly claimed, the prudent course, under the circumstances of the instant case, would be to examine all of the documents included within the privilege log, *in camera*.

**C. Regardless of Whether Defendant's Objections Were Waived, This Court Ought to Instruct the Defendants to Perform a Diligent Search for the Documents Requested in Plaintiff's First Requests for Production Number 17, 18, & 19.**

In its belated June 8, 2006 response to Ms. Calef's First Requests for Production of Documents, the Defendant objected to production of employee files in response to Requests Number 17, 18, and 19 as "overly broad" and as seeking "highly confidential and personal information that is not relevant to a claim or defense of any party." *See* Ex. E. Later, in a telephone conversation on June 19, 2006, the Defendant by counsel explained that an Agreed Protective Order would be necessary prior to production of the employee files, even though each of the production requests specifically instructed the Defendant to redact identifying information such as names, addresses, telephone numbers, etc.

In the course of the June 19, 2006 telephone conversation, Plaintiff agreed to execute an Agreed Protective Order. Defense counsel indicated that she would forward such an order in that same conversation. *See* Ex. L. To date no Agreed Protective Order has been forwarded to undersigned counsel.

On June 29, 2006, Defendant supplemented its responses to Requests Number 17, 18, and

15

19. In the supplemental responses, Defendant averred that "after reasonable investigation, Defendant is not aware of any employee within the Ohio Valley region who requested a reasonable accommodation." Ex. N. The letter accompanying this supplemental discovery, however, provided that, "as I indicated previously, I will forward a protective order to you in the near future." Ex. M. This naturally begs the question: If there are no documents responsive to Requests Number 17, 18, & 19, then why is the Agreed Protective Order still necessary? The true curiosity, of course, is how can it be that of all the individuals employed, within an entire region, by a company as large as the FedEx, not one single such employee ever requested reasonable accommodation? The assertion while perhaps empirically possible is nonetheless logically beyond the ken.

Thus, as the Defendant chose first to object on grounds of confidentiality, rather than simply declaring the absence of documentation responsive to the requests, and 11 days later maintained the need for an Agreed Protective Order as a means of protecting employee confidentiality, and only on the eve of Plaintiff's clearly anticipated Motion to Compel declared the absence of any responsive documentation, Plaintiff respectfully asks the Court to instruct the Defendant to perform a diligent search for documents responsive to Requests Number 17, 18, & 19. Given the shifting sands of Defendant's claimed rationale for non-production, this would appear to be the prudent procedural course to pursue. Furthermore, the Defendant this Court should determine whether production of any documents discovered in the diligent search will require entry of a Protective Order.

### III. CONCLUSION

For the foregoing reasons Plaintiff Tammy L. Calef respectfully asks this Honorable Court

to grant her Motion to Compel. Ms. Calef further requests such other and additional relief as this court may deem just and proper in the interests of justice.

Respectfully submitted,<br>
Tammy l. Calef by counsel

/s/_____
Georgia Lee Gates #4547
Law Offices of Ron L. Tucker
310 Adams Street
Fairmont, WV 26554
(304) 367-1137
GeorgiaLeeGates@AOL.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY L. CALEF,

        Plaintiff,

V.                                    CIVIL ACTION NO: 1:06-CV-47

FEDEX GROUND PACKAGE SYSTEM, INC.

        Defendant.

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION TO COMPEL THE DEFENDANT FEDEX TO RESPOND FULLY, COMPLETELY AND HONESTLY TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

### CERTIFICATION OF COUNSEL

I hereby certify that, in accordance with Federal Rules of Civil Procedure, Rule 37 and Local Rules of Civil Procedure, Rule 37.02 that I, as counsel for Plaintiff, made every good faith effort to meet and confer with defense counsel, including by telephone in an attempt to amicably resolve the instant discovery dispute without resort to this Court, prior to filing the instant Motion to Compel.

                                                  /s/_____
                                                  Georgia Lee Gates #4547
                                                  Law Offices of Ron L. Tucker
                                                  310 Adams Street
                                                  Fairmont, WV 26554
                                                  (304) 367-1137
                                                  GeorgiaLeeGates@AOL.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY L. CALEF,
    Plaintiff,

V.                                                    CIVIL ACTION NO: 1:06-CV-47

FEDEX GROUND PACKAGE SYSTEM, INC.
    Defendant.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 5th day of July, 2006, the foregoing *"Plaintiff's Memorandum in Support of Her Motion to Compel the Defendant Fedex to Respond Fully, Completely and Honestly to Plaintiff's First Requests for Production of Documents"* was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to April Hincy Morgan, Esquire (ahincy@eckertseaman.com) and Allan Brown, Esquire, Christine M. Gass, Esquire and Christina Kepplinger, Esquire will be served by depositing the same in the United States mail, postage pre-paid to the following addresses, on July 6, 2006:

| | |
|---|---|
| April Morgan Hincy, Esquire<br>Eckert Seamans Cherin & Mellott<br>2400 Cranberry Square<br>Morgantown, WV  26508-9209<br>email: ahincy@eckertseaman.com | Allan Brown, Esquire<br>1000 FedEx Drive<br>Moon Township, PA  15108 |
| Christine M. Gass, Esquire<br>Eckert Seamans Cherin & Mellott<br>600 Grant Street, 45th Floor<br>Pittsburgh, PA  15219 | Christina I. Kepplinger, Esq.<br>Eckert Seamans Cherin & Mellott<br>600 Grant Street, 45th Floor<br>Pittsburgh, PA  15219 |

/s/ _____
Georgia Lee Gates, #8547
Law Offices of Ron L. Tucker
310 Adams Street
Fairmont, WV  26554
(304) 367-1137
GeorgiaLeeGates@AOL.com