IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY L. CALEF,
        Plaintiff,

V.                              CIVIL ACTION NO: 1:06-CV-47

FEDEX GROUND PACKAGE SYSTEM, INC.,
        Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION IN LIMINE REGARDING COLLATERAL SOURCE BENEFITS**

Plaintiff Tammy Calef has timely moved the Court *in limine* for an order prohibiting the Defendant from introducing or attempting to introduce any evidence, whether testimonial, documentary or other, which might indicate either directly or through inference the amount of monies received by or benefits conferred upon Ms. Calef by virtue of any disability plan, whether extended illness benefit, short term disability benefit, or long term disability benefit plan administered by the Defendant because such benefits are a collateral source. Ms. Calef provides the instant memorandum of law as further support for that motion.

**I. STATEMENT OF RELEVANT FACTS**

When Ms. Calef was actively employed by the Defendant as a Service manager III, her salary was only one component of her compensation. *See* Ex1 Online Total Compensation Statement ("As you can see, salary is only one component of your total compensation"). Instead, a portion of her pay came as fringe benefits and deferred compensation provided under various plans administered by the Defendant.

In its "Manager's Guide" the Defendant has denominated these deferred compensation plans the FedEx Ground "Hidden Paycheck:"

A major part of compensation at FedEx Ground is hidden from view. This

> "Hidden Paycheck" is in the form of benefits – health coverage, retirement plans, disability insurance, and other benefits of employment at FedEx Ground .
>
> * * *
>
> What's more, in addition to our standard benefits package, FedEx Ground also offers a wide selection of supplemental benefits – such as life insurance, long-term disability insurance, and educational reimbursement – that can improve the employee's quality of life in even more ways.

Ex. 2 (FedEx Managers Guide, Ground Edition, 150. More specifically, in its "Manager's Guide"Defendant declares that the following benefit plans make up the "Hidden Paycheck:

> **Adding Up the Hidden Paycheck**
> At FedEx Ground, benefits represent a substantive part of an employee's compensation. The benefits that make up this "Hidden Paycheck" include:
> - Health care, including medical, dental, and vision
> - Vacation and holidays
> - Income replacement and survivor benefits – short-term and long-term disability, and life insurance
> - Educational reimbursement
> - Retirement and savings plans – both a defined pension plan and a 401(k) savings plan.

Ex. 2, 151. In addition to those benefit plans listed above, the Defendant classifies Social Security, Unemployment Insurance and Workers Compensation as components of its "Hidden Paycheck." Ex.1. Ms. Calef contributed no monies for the Unemployment Insurance and Workers Compensation components of the "Hidden Paycheck." Ex. 1. However, she did pay a portion of the premiums necessary for the Health & Welfare component of the "Hidden Paycheck" which includes the disability insurance coverage, at issue. *See* Ex. 1.

On February 24, 2004, because of an injury to Ms. Calef's hand which prevented her from lifting greater than 20 pounds and limited the amount of driving she could do, Steve Hickman, the Regional Human Resources Manager for the Defendant, ordered Ms. Calef to report off work and to apply for Short Term Disability and Family Medical Leave Act benefits.

Ex 3.  Ms. Calef complied with Mr. Hickman's instructions and became a recipient of benefits under the Defendant's income replacement/disability plans set out above.  Ms. Calef continued to receive benefits under these plans through February 2006.  Ex. 4.

## II. ARGUMENT

**It is Well Settled Under West Virginia Law that Employee Benefits are a Collateral Source Which Cannot be Used to Reduce Damages in a Wrongful Discharge Cause of Action.**

The collateral source rule precludes a defendant from offsetting against the plaintiff's claimed damages payments made by a collateral source. The West Virginia Supreme Court of Appeals has long recognized that employee benefits are a collateral source that cannot be used to bar or reduce a claim for lost wages.  The first case to consider the issue addressed application of the collateral source rule to sick leave wages.

> One claiming damages for loss of wages is not barred from recovering on the claim merely because he was paid in accordance with a sick leave policy or similar plan while away from work.

Syl pt. 4, Ellard v Harvey, 231 S.E.2d 339 (W.Va. 1976).  Nearly twenty years later, the court invoked the collateral source rule to bar an employer defendant's claimed entitlement to an offset for unemployment compensation benefits paid, as against the employee plaintiff's wrongful discharge claim for lost wages. Orr v. Crowder, 315 S.E.2d 593 (W.Va. 1984).  In so ruling, the court simply invoked the "normal" operation of the rule.

> The Collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party.

Syl pt. 8, Orr, 315 S.E.2d at 339.

Similarly, in Powell v. Wyoming Cablevision, Inc., 403 S.E.2d 717 (W.Va. 1991) the

court refused to offset an employee's back wage claim in a retaliatory discharge case because of the receipt of unemployment compensation benefits. On this occasion the court directly addressed the employee-employer relationship in the context of the benefits received:

> Benefits of this character are intended to alleviate the distress of unemployment and not to diminish the amount which an employer must pay as damages for the wrongful discharge of an employee.

Powell, 403 S.E.2d at 725. Based upon Powell, it appears that the West Virginia Supreme Court of Appeals is more concerned with the purpose of the collateral source at issue than with the source of the benefits conferred as the employer defendants in both Powell and Orr must necessarily have contributed to the unemployment compensation benefits received by the plaintiff employees.

The West Virginia Supreme Court of Appeals has never directly considered whether payments received by an employee under a short or long-term disability plan constitute a collateral source. However, the United States District Court for the Southern District of West Virginia has considered the issue in the context of an employee's deliberate intent suit against his employer. Reed v. E.I. Du Pont De Nemours and Company, 109 F.Supp.2d 459 (SDWV 2000). In Reed the court explained that the collateral source rule is not a to apply as court's generally concur that a plaintiff's recovery is "not subject to a setoff for benefits independent of the tortfeasor. Reed, 109 F.Supp.2d at 465. Accordingly, it is a straight forward matter to deny reduction of any recovery in relation to "Medical insurance and other forms of protection purchased by the plaintiff, ass well as gifts the plaintiff receives, *or benefits characterized as fringe benefits*."(emphasis added) Reed, 109 F.Supp2d at 465.

With reference to this issue of whether the benefits at issue are fringe benefits, the Reed

4

applied the reasoning employed in Allen v Exxon Shipping Company, 639 F.Supp. 1545 (D.Me 1986).

In Allen, the court while considering cross-*in-limine* motions on the issue, looked to the purpose of the short-term and long-term disability plan under which the employee plaintiff received benefits from the employer defendant, so as to determine whether the collateral source rule would bar a setoff to any judgment which might ultimately be received. In ascertaining the plan's purpose, the court reasoned that the "general issue to be resolved is whether payment of the benefits is made pursuant to a plan of the employer to provide for its own indemnification or whether the payment is in the nature of a fringe benefit or deferred compensation." Allen, 639 F.Supp. at 1547-1548.

If the plan was created for the purposes of indemnification, then the employer is entitled to a setoff for any benefits paid to the plaintiff. On the other hand, if the plan "is in the nature of fringe benefits or deferred compensation," then the collateral source rule bars any such setoff of the employee plaintiff's damages. In Allen, because it was unclear as to the nature of the plan at issue, the court employed five factors so as to properly classify the plan as either one of indemnity or fringe benefits/deferred compensation: "(1) whether the employee makes any contribution to funding of the disability payment; (2) whether the benefit plan arises as the result of a collective bargaining activity; (3) whether the plan and payments thereunder cover both work-related and nonwork-related injuries; (4) whether payments from the plan are contingent upon length of service of the employee; and (5) whether the plan contains any specific language contemplating a set-off of benefits received under the plan against a judgment recovered in a tort action." Allen, 639 F.Supp. at 1548. Application of these factors yielded the conclusion that the

plan at issue in Allen was one of employer indemnification. Allen, 639 F.Supp. at 1549.

Another District of Maine opinion on the issue is instructive under the circumstances of the case *subjudice*. In Webber v International Paper Company, 307 F.Supp.2d 119 (D.Me, 2004), the district court, applying Allen, considered whether a former employee's three-million dollar verdict in a disability discrimination suit, which included an award for back pay, should be offset by the long-term disability benefits he received under his former employer's plan. The district court began its discussion of the issue with reference to the purpose underlying the collateral source rule:

> The premise underlying [the collateral source rule] is that either the injured party or the tortfeasor will receive a windfall if part of a loss is paid by an independent source, and as between the injured party and the tortfeasor, the injured party should reap the benefit of the windfall.

Webber, 307 F.Supp.2d at 124. After its observation that if any party is to receive a "windfall" from a collateral source it should be the injured party, the court reiterated the Allen court's primary basis for ascertaining whether the collateral source rule should be enforced in the context of an employer defendant employee benefit plan, applied the Allen factors, and found "that indemnification of the employer for liability was not a dominant purpose of the plan, and that the long-term disability policy in question is properly considered a fringe benefit." Webber, 307 F.Supp.2d at 125. Therefore, the district court ultimately held that the long-term disability benefits paid to the employee plaintiff "constitute a collateral source which may not be offset against an award of back pay under the Maine Human Rights Act." Webber, 307 F.Supp.2d at 125.

These two District of Maine cases, with their emphasis upon the ascertainment of the

purpose underlying an employer benefit plan, fit nicely with the West Virginia Supreme Court of Appeals reference to the purpose underlying the unemployment compensation benefits at issue in Orr and Powell. As a consequence, in the absence of a certified question on the issue, it is appropriate to apply the rule established in Allen and Webber to the instant case. Thus, this Honorable Court should ask whether the disability plan benefits received by Ms. Calef were made pursuant to a plan of the Defendant to provide for its own indemnification or whether the payments were in the nature of a fringe benefit or deferred compensation to Ms. Calef?

The answer to this query must necessarily be that the benefits received by Ms. Calef were in the nature of a fringe benefit or deferred compensation. Moreover, this conclusion does not require application of the Allen factors. Instead the Court need only look to the Defendant's clear admission that its plan "benefits represent a substantive part of an employee's compensation." And that "the benefits that make up this 'Hidden Paycheck'" include income replacement/short-term and long-term disability. Therefore, pursuant to Orr and Powell, the disability benefits Ms. Calef received under the Defendant's plans are subject to simple application of the collateral source rule which necessarily precludes the Defendant from offsetting against Ms. Calef's claim for back pay damages. Accordingly, this Court should prohibit the Defendant from introducing or attempting to introduce any evidence, whether testimonial, documentary or other, which might indicate either directly or through inference the amount of monies received by or benefits conferred upon Ms. Calef by virtue of any of the Defendant's illness or disability plans.

### III. CONCLUSION

For the foregoing reasons Ms. Calef respectfully requests this Honorable Court to grant

her *in limine* motion regarding collateral source benefits. Ms. Calef further asks for such other and additional relief as this Court may deem just and proper in the interests of justice.

                 Respectfully submitted,
                 Plaintiff by counsel

\_\_\_\_/s/_____
Georgia Lee Gates #8547
310 Adams Street
Fairmont, West Virginia 26554
(304) 367-1137
georgialeegates@AOL.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TAMMY L. CALEF,**
    **Plaintiff,**

**V.**                                               **CIVIL ACTION NO:  1:06-CV-47**

**FEDEX GROUND PACKAGE SYSTEM, INC.**

    **Defendant.**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 16th day of July, 2007, the foregoing "**Memorandum in Support of Plaintiff's Motion in Limine Regarding Collateral Source Benefits**" was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

| | |
|---|---|
| April Morgan Hincy, Esquire | Joseph P. McHugh, Esquire |
| Eckert Seamans Cherin & Mellott | FedEx Ground Package System, Inc |
| 2400 Cranberry Square | 1000 FedEx Drive |
| Morgantown, WV  26508-9209 | Moon Township, PA  15108 |
| Fax:  304-598-1181 | Fax:  412-859-5450 |
| Email:  ahincy @eckertseaman.com | Email:  joseph.mchugh@fedex.com |

J. John Myer, Esquire
Christina I. Kepplinger, Esquire
Eckert Seamans Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Fax:  412-566-6099
Email: jmyers@eckertseaman.com

                                               /s/_____
                                               Georgia Lee Gates #8547
                                               310 Adams Street
                                               Fairmont, WV  26554
                                               (304) 367-1137
                                               georgialeegates@AOL.com