IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA



TAMMY L. CALEF,

        Plaintiff,

v.                    **//**    **CIVIL ACTION NO. 1:06CV47**
                             **(Judge Keeley)**

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is pending on the defendant's motion for summary judgment on the issues of sex and disability discrimination under the West Virginia Human Rights Act ("WVHRA"). For the following reasons, the Court **GRANTS-IN-PART and DENIES-IN-PART** the motion for summary judgment.

### I. STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587.

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual statement of the case is related in the light most favorable to the plaintiff, Tammy L. Calef ("Calef"). Calef was initially employed as a Package and Delivery Operations Coordinator with Roadway Packages Systems ("Roadway"). Defendant FedEx Ground Package System, Inc. ("FedEx") acquired Roadway in June 2000. In April 2003, FedEx's Regional Human Resource Manager, Steve Hickman ("Hickman"), promoted Calef to Terminal Manager for the Clarksburg, West Virginia terminal. Calef served in that position from April 29, 2003 until October 28, 2003. On October 28, 2003, Hickman, FedEx Division Human Resource Manager, Lynn Angstadt ("Angstadt"), and FedEx Regional Senior Manager, Scott Burns ("Burns"), demoted Calef to Dock Service Manager. Kyle Ryan ("Ryan") replaced Calef in the Terminal Manager position and became her supervisor.

Three months later, on January 23, 2004, Calef was laterally transferred to Package and Delivery Service Manager. As part of this transfer, Calef signed a Performance Expectation Plan ("PEP") which outlined FedEx's expectations for her in the position. Chris Davis ("Davis") replaced Calef as Dock Service Manager.

One day following her transfer, Calef injured her left hand while playing volleyball. Calef initially thought the injury was

3

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

inconsequential, but her condition worsened and, ultimately, she told Ryan she was having difficulty delivering packages, a duty Calef claims is required of a van driver. According to Calef, Ryan told her to provide a medical excuse to establish that she was unable to deliver packages. On February 5, 2004, Hickman asked whether Calef was sending out resumes and offered her a severance package if she wanted to quit her job at FedEx. Calef contends she informed Hickman that she did not intend to quit FedEx.

On February 16, 2004, Dr. Kelly Nelson provided a medical excuse for Calef that limited the use of her left hand and prohibited any lifting greater than 20lbs until after March 1, 2004. On the same day, Dr. Stephen L. Pinti also provided a medical excuse for Calef, stating that she was "limited on her ability to drive." He further stated that "[l]imiting the amount of driving would greatly improve her condition whereas driving frequently could cause her condition to worsen." Calef claims Ryan required her to deliver packages even after she provided him with these medical excuses.

On February 20, 2004, Calef had a cast put on her left arm, and Dr. P. Bradley Hall provided a medical excuse that prohibited her from using her left arm until March 20, 2004. According to

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

Calef, Ryan finally permitted her to perform the sedentary duties set forth in her PEP.

Four days later, on February 24, 2004, Hickman had a telephone conference with Calef during which he advised her to take a medical leave of absence and contact the short-term disability administrator. He further advised her that FedEx needed to assess her ability to do her job based on the restrictions imposed on her by her doctors, and that she should stay on leave until she received further instructions from him or Ryan. In response, Calef asked Hickman why she was being sent home; she concedes, however, that, prior to the telephone conference, she had completed a "Reasonable Accommodation Checklist" indicating what she could and could not do. Hickman says he sent Calef home to allow her to recuperate and avoid further injury to her hand in light of her medical restrictions.

On May 11, 2004, Hickman notified Calef that her Family Medical Leave entitlement would expire on May 19, 2004 and advised her that he understood her doctor had most recently estimated her return to work date as May 23, 2004. Based on her doctor's representation that she would not be able to return to work before her family medical leave expired, Calef then applied for and received short-term disability benefits in the amount of her full

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

salary until August 2004. After those short-term benefits expired, Calef applied for and received long-term disability benefits from The Hartford from August 2004 until February 2006. As part of her application for long-term disability benefits, Calef also applied for disability benefits from the Social Security Administration, stating that she "[had become] unable to work because of [her] disabling condition on February 24, 2004." Calef remains on a medical leave of absence, although she has been attending law school as a full-time student since August 2006. FedEx has told her to advise it when she is released to return to work without restrictions.

On February 22, 2006, Calef filed suit against FedEx pursuant to the WVHRA, W. Va. Code § 5-11-9, alleging that FedEx had discriminated against her on the basis of her sex and a disability. On March 24, 2006, FedEx removed that suit to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. After the completion of discovery, FedEx filed a motion for summary judgment with respect to all claims asserted by Calef in her complaint. The motion has been fully briefed by the parties and the issues raised by FedEx are ripe for review.

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

### III. ANALYSIS

**A. Sex Discrimination Claim**

In her complaint, Calef alleges that, on October 25, 2003, FedEx demoted her from Terminal Manager to Dock Service Manager because of her sex. Under the West Virginia Human Rights Act, employment discrimination claims must be brought within two years after the employee receives notice of the adverse employment action. W.Va. Code § 5-11-9; McCourt v. Oneida Coal Company, Inc., 425 S.E.2d 602, 606 (1992). Calef concedes that she cannot recover damages for her demotion because she did not file her complaint until February 22, 2006, approximately four months after the statute of limitations on that claim had run. She contends, however, that her sex was a motivating factor in FedEx's February 24, 2004 decision to place her on medical leave.

Discrimination claims brought under the West Virginia Human Rights Act are governed by the same analytical framework developed under Title VII – at least where the Act's language does not direct otherwise. Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 160 (W.Va. 1995). When there is no direct evidence of discrimination, a plaintiff must create an inference of discrimination by establishing a prima facie case. Id. In order to make a prima

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

facie case of employment discrimination, a plaintiff must offer proof of the following:

> (1) That the plaintiff is a member of a protected class;
> (2) That the employer made an adverse decision concerning the plaintiff;
> (3) But for the plaintiff's protected status, the adverse decision would have been made.

Syl. Pt 3, Conaway v. Eastern Associated Coal Corp., 358 S.E.2d 423 (1986). To establish the third element of the prima facie case, a plaintiff must show some evidence sufficiently linking the employer's decision and the plaintiff's status as a member of a protected class. Conaway, 358 S.E.2d at 429-30.

On February 24, 2004, Hickman had a telephone conference with Calef and directed her to take medical leave. In an attempt to establish a nexus between FedEx's decision and her sex, Calef relies on statements allegedly made by Hickman on February 5, 2004, shortly after she injured her hand, when he asked her whether she was sending out resumes and offered her a severance package if she wanted to quit her job at FedEx.

Relying on National RR Passenger Corp. v. Morgan, 536 U.S. 101 (2002), Calef asserts that the employment decisions made between October 2003 and February 2004 can serve as "relevant background evidence" to support her claim of sex discrimination involving

8

ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION

FedEx's decision to place her on medical leave.  Specifically,
Calef argues that the facts surrounding her October 25, 2003
demotion to Dock Service Manager and her January 23, 2004 lateral
transfer from Dock Service Manager to Package and Delivery Service
Manager establish a prima facie case of sex discrimination.

In Morgan, the United States Supreme Court addressed a sex
discrimination claim and focused on the relationship between
discrete discriminatory acts that occur within and outside the
relevant statute of limitations.  Id. at 112-13.    Specifically,

> [t]he  existence  of  past  acts  and  the
> employee's prior knowledge of their occurrence
> .  .  .  does  not  bar  employees  from  filing
> charges about related discrete acts so long as
> the acts are independently discriminatory and
> charges addressing those acts are themselves
> timely  filed.  Nor  does  the  statute  bar  an
> employee  from  using  the  prior  acts  as
> background evidence to support a timely claim.

Id. at 113.

Following  Morgan,  the  Ninth  Circuit  Court  of  Appeals
considered  the  admissibility  of  prior  discriminatory  acts  as
"background evidence" that were supportive of timely filed claims.
Lyons v. England, 307 F.3d 1092 (9th Cir. 2002).  It concluded that
"[a]t  the  initial  stage  of  a  case  of  disparate  treatment,
appropriate background evidence will be evidence, either direct or

circumstantial, that, <u>when combined with evidence of the employer's
present conduct</u>, gives rise to an inference of unlawful
discrimination." <u>Id.</u> at 1110-1111 (emphasis added).

Based on the holdings in <u>Morgan</u> and <u>Lyons</u>, the Court concludes
that "background evidence" of prior discriminatory acts is
inadmissible absent evidence of present discriminatory conduct.
Here, Calef has offered no evidence that male employees with
similar medical restrictions were permitted to continue to work
with accommodations, or that every female employee who was placed
on medical restrictions was automatically directed to take medical
leave. Moreover, the alleged statements made by Hickman in no way
referenced her sex and came after she had injured her hand and was
having difficulty lifting and delivering packages.

Because Calef relies solely on time-barred acts that took
place more than two years before she filed her complaint, she
cannot establish a nexus between FedEx's decision to place her on
medical leave and her sex. Evidence regarding FedEx's employment
decisions between October 2003 and February 2004 does not
constitute mere "background evidence" to present acts of
discrimination that have been timely alleged. Rather, they are the
only evidence of discriminatory acts by FedEx relating to Calef's
sex. Were the Court to allow the introduction of such evidence, it

would, in essence, be permitting Calef to resurrect her time-barred claims. Accordingly, her sex discrimination claim concerning FedEx's decision to place her on medical leave fails as a matter of law.

## B. Disability Discrimination Claim

The WVHRA, W.Va. Code § 5-11-9, makes it unlawful for an employer to discriminate against an individual who "is able and competent to perform the services required even if such individual is blind or disabled." Therefore, the WVHRA protects only "qualified" individuals with disabilities who, with or without a reasonable accommodation, can perform the essential functions of the job she previously held or desires. Hosaflook v. Consolidation Coal Co., 497 S.E.2d 174, 179 (1994); Ranger Fuel Corp. v. West Virginia Human Rights Commission, 376 S.E.2d 154, 159 (W.Va. 1988). The key questions raised by FedEx's summary judgment motion are: (1) whether Calef has a disability as defined by the WVHRA; and (2) whether Calef is able and competent, with or without a reasonable accommodation, to perform the essential functions of her job. If Calef fails to establish that she is a "qualified person with a disability," she cannot invoke the protection of the WVHRA's prohibition against disability discrimination. Stone v. St. Joseph's Hospital of Parkersburg, 538 S.E.2d 389, 398 (W.Va. 2000).

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

### 1. Person With A Disability

To assert a disability discrimination claim under the WVHRA, Calef must first establish that she has a disability as defined by that Act. Calef contends that she has an impairment that does not substantially limit major life activities, but that FedEx has treated her as if she has such a limitation.

Although the WVHRA defines "disability" as a mental or physical impairment that substantially limits one or more of a person's major life activities[1], W. Va. Code § 5-11-3(m)(1), the Act also defines "disability" as "being regarded as having such impairment." W.Va. Code 5-11-3(m)(3). The West Virginia Code of State Rules[2] ("WVCSR") defines "Is Regarded as Having an Impairment" as (1) having an impairment that does not limit major life activities, but being treated by another as having such a limitation; (2) having an impairment that only substantially limits major life activities due to the attitudes of others toward the impairment; and (3) not having an impairment as defined, but being

---

[1] The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. W.Va. Code § 5-11-3(m)(1).

[2] The regulations in the WVCSR that interpret and implement the provisions of the WVHRA are promulgated by the West Virginia Human Rights Commission.

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

treated as having such an impairment.  W.Va. Code. St. R. § 77-1-2.8.

In <u>Stone v. St. Joseph's Hospital at Parkersburg</u>, 538 S.E.2d at 398, the West Virginia Supreme Court of Appeals addressed the question of whether an employee had produced sufficient evidence from which a jury could conclude that his employer regarded him as disabled.  Stone worked as an EMT and then as a paramedic on the ambulance crew for the Hospital.  <u>Id.</u> at 393.  His position involved driving an emergency vehicle, providing skilled emergency medical care, and engaging in regular and sometimes strenuous physical exertion, often under challenging physical and psychological circumstances.  <u>Id.</u> On two occasions, Stone reported a workplace injury, specifically a minor strain to his back when he exerted himself in an on-the-job lifting maneuver.  <u>Id.</u>  Based on these two reports, the Hospital reassigned Stone to an office dispatcher position until he could appear for an independent medical examination by a back specialist.  <u>Id.</u>

Stone strongly protested the transfer and advised the Hospital of two medical opinions stating he had no limitations that would prevent him from performing his regular ambulance job.  <u>Id.</u> After a full examination by a specialist chosen by the hospital, Stone

13

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

was medically cleared and returned to his paramedic position. Id. at 394.

Before he was returned to his paramedic position, however, Stone brought suit against the Hospital, alleging that he had been removed from his regular position despite medical evidence indicating his ability to perform the work. Id. He asserted that the Hospital never contacted any of his physicians and ignored his denial of taking prescribed pain medication. Id.

The Hospital asserted that Stone could not file a claim under the WVHRA because he had not produced evidence to establish that he was a protected person with a disability. Id. at 406-07. Specifically, the Hospital asserted that it had not regarded Stone as disabled, but had only "suspected" that Stone's back problem limited his ability to safely work as a paramedic. Id. It further argued that, as "suspected," the limitations did not substantially limit Stone in his major life activity of working. Id.

In Stone, West Virginia's highest court concluded that, "[d]espite what the hospital said about their subjective view of Mr. Stone, the jury was entitled to look at what the Hospital did." "The limitations or restrictions that the Hospital regarded as appropriate for Mr. Stone were certainly of sufficient magnitude and breadth -- taking him off all of his regular duties and

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

prohibiting him from driving, providing patient care, lifting, and carrying -- for a jury to conclude that Mr. Stone was treated as being substantially limited in his major life activity of working."

In this case, Calef claims that FedEx regarded her as disabled when it involuntarily removed her from all regular job duties, placed her on medical leave and refused to allow her to return to work until she was rid of all medical restrictions. FedEx, however, contends that its decision to place Calef on medical leave does not establish that it regarded her as disabled, but only that it responded to her "escalating" complaints and medical restrictions.

Unlike the plaintiff in Stone, Calef does not dispute having limitations; in fact, she admits that she put FedEx on notice that her hand injury  limited her ability to perform certain activities. In her complaints and medical excuses, however, Calef contends that she did not advise FedEx that her injury completely prohibited any lifting or driving, but only that it limited her ability to perform such activities. As acknowledged by FedEx in its summary judgment motion, a lifting restriction is not automatically an impairment that substantially limits one's ability to perform a major life activity. Nevertheless, as the basis for its action FedEx relies

15

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

on the third medical excuse provided by Calef, which completely prohibited the use of Calef's left arm until March 20, 2004.

Although her medical excuses did not expressly restrict Calef from working, when taken as a whole there is no dispute that her complaints clearly worsened and her medical restrictions increased over the month between her injury and FedEx's decision to place her on medical leave. Moreover, although she claims that she continued to inquire about returning to work, Calef contemporaneously provided medical documentation in support of her pursuit of short-term disability benefits that indicated she was currently unable to work, but in the near future would be able to return to work. The medical documentation Calef submitted in support of her short-term disability benefits prompted the following statement by Hickman in a May 11, 2004 letter to Calef:

> We understand from Gates McDonald, our Short-term Disability administrator, that your attending physician anticipates that your current disability has inhibited your return to work and has most recently estimated your return to work date as May 23, 2004.

Significantly, Calef eventually sought long-term disability benefits, stating that she was "unable to work because of [her] disabling condition."

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

Various inferences may be drawn from these facts, and various legal conclusions could be reached by a jury. For example, based on the medical excuses provided by Calef, a jury could determine that FedEx regarded her work limitations as temporary and that she would eventually return to her duties. A temporary condition does not substantially limit a major life activity. W.Va. Code. St. R. § 77-1-2.5.3. Hoops v. Elk Run Coal Company, Inc., 95 F.Supp.2d 612, 617-618 (S.D.W.Va. 2000)(finding that temporary conditions are excluded from the protections of the WVHRA). Thus, FedEx would not have regarded Calef as having a disability.

Based on the medical information provided by Calef after FedEx placed her on medical leave, however, the jury could also infer that Calef represented to FedEx that she had a disability that substantially limited a major life activity when she did not actually have such an impairment. Thus, Calef's representations concerning her condition could have differed from FedEx's perceptions of her condition, while FedEx, out of the abundance of caution, may have relied on Calef's representations in taking employment actions. Nevertheless, based on the specific limitations set forth in Calef's medical excuses and her representations that she could work, a jury also could determine that FedEx regarded Calef as having an impairment that substantially limited her

17

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

ability to work when, in fact, she had no such impairment.  This factual scenario is similar to the situation in <u>Stone</u>.

Because there are genuine issues of triable fact about this matter, the Court concludes that whether Calef is a person with a disability as defined under the WVHRA must be decided by a jury.

### 2. Qualified Person- Able and Competent

In order to receive protection under the WVHRA, in addition to having a disability, Calef must establish that she is a "qualified person."   <u>Hosaflook v. Consolidation Coal Co.</u>, 497 S.E.2d at 179.   A "qualified person with a disability" is "an individual who is able and competent, with reasonable accommodation, to perform the essential functions of the job . . . ."  W.Va. Code. St. R. § 77-1-4.2. "An employer may . . . discharge a qualified individual with a disability if, even after reasonable accommodation, the individual is unable to perform the essential functions of the job without creating a substantial hazard to her health and safety or the health and safety of others." W.Va. Code. St. R. § 77-1-4.7.

FedEx advances two arguments with respect to the "able and competent" prong of a prima facie case of disability discrimination.  First, it contends that Calef cannot perform the essential functions of her position at FedEx because it includes

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

lifting and delivering packages.  Second, it argues that Calef does

not have a right to a reasonable accommodation because she does not

have a disability.

### a. Essential Functions

The day prior to her injury, FedEx transferred Calef to the

position of Package and Delivery Service Manager, where she worked

until being placed on medical leave.  For that position, FedEx has

produced a written job description for Service Manager II that

states an "employee must occasionally lift and/or move up to 25

pounds."  The job description  expressly states that the job's

"essential functions" include:

- Coordinat[ing]      and      dispatch[ing]
  shipments  to  and  from  distribution
  centers by disbursing work and monitoring
  progress;
- Handl[ing]  equipment  malfunctions  and
  assist[ing]    in    maintaining    all
  distribution   management   and   system
  procedures;
- Train[ing] new Package handlers through
  orientation, building networks among new
  and experienced employees and provid[ing]
  on-the-job learning experiences.

Relying on the deposition testimony of both Calef and Ryan, Fed Ex

asserts that the Package and Delivery Service Manager position also

included making deliveries.  Therefore, based on Calef's claimed

limitation  regarding  lifting  no  greater  than  20  pounds  and

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

prohibition on delivering packages, FedEx contends that she is not

able and competent to perform the essential functions of her job.

Calef asserts that she was a Service Manager III assigned to

Package and Delivery duties. The written job description for a

Service Manager III position, attached to Calef's deposition, lists

the "principle [sic] accountabilities" of the job as follows:

- Motivates and directs part-time hourly operations employees distributing work and monitoring progress;
- Participates in developing and implementing plans for new resources, services, and procedures;
- Conducts training and performance evaluations;
- Ensures timely product delivery;
- Investigates and resolves distribution discrepancies;
- Implements performance and tracking systems for services and employees; and Coordinates and dispatches shipments to and from distribution centers by distributing work and monitoring progress.

With respect to "physical demands," the written job description

states that "the physical demands described here are representative

of those that must be met by an employee to successfully perform

the essential functions of this job." Importantly, only specific

vision abilities are listed in the "physical demands" section.

When Calef was transferred to Package and Delivery Service

Manager, Ryan required her to sign a Performance Expectation Plan

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

("PEP") that set forth FedEx's expectations of her in the position. The PEP states that the Package and Delivery Service Manager's duties and functions include: (1) conducting two contractor service rides each week, to be reviewed with contractors within two days of each such ride; (2) completing an accident report for any accident on the day of the accident, performing a post-accident ride with the contractor on the following date and submitting a report to her supervisor; (3) completing a Driver Release Audit per quarter for each contractor, meeting with each contractor to review the audit and submitting a summary of the meeting and results to her supervisor; (4) completing Van Service Audits for all contractors and temporary drivers each day and providing a summary to her supervisor; and (5) completing other duties and functions as assigned by Senior Management.

Based on her contention that she was a Service Manager III, and given the duties and functions included in her PEP, Calef asserts that the only tasks she could not perform, lifting and delivering, were not even included in her job description. She contends that she could perform the essential functions of her job without any accommodation because the essential functions did not include lifting or delivering. In response to Fed Ex's contentions that she previously had represented otherwise, Calef makes a

21

distinction between the duties that her supervisor made her perform on a daily basis and the duties that were required in writing when she started the position.

A critical factual issue in this case that will have to be resolved is what were the essential functions of a Package and Delivery Service Manager, the position that Calef held at the time FedEx placed her on medical leave. A job function may be considered essential because: (1) the reason the employment position exists is to perform that function; (2) a limited number of employees are available to perform that function; and (3) the amount of time spent on the job performing the function. W.Va. Code. St. R. § 77-1-4.2.    "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description may be considered evidence of the essential functions of the job." W.Va. Code. St. R. § 77-1-4.2.

Based on the record in the case, an evidentiary dispute exists about what written job description applied to Calef in her position as Package and Delivery Service Manager.  A dispute also exists as to what duties actually were included in the job description, and what duties FedEx required all Package and Delivery Service Managers to perform on a daily basis.  A jury will be able to consider whether employees in other positions routinely were

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

required to perform the tasks of lifting and delivering at FedEx that Calef contends Ryan required of her. Therefore, the question of whether Calef was able and competent to perform the essential functions of her job cannot be resolved as a matter of law, but will have to be decided by a jury.

### b. Reasonable Accommodation

Alternatively, Calef contends that, if lifting and delivering packages were essential functions of her job, a reasonable accommodation existed that would have allowed her to perform those essential functions at FedEx. "Reasonable Accommodation" means reasonable modifications or adjustments, determined on a case-by-case basis, which attempt to enable a disabled person to be hired or to remain in his or her original position. W.Va. Code. St. R. § 77-1-4.4.   An employer is not required to offer the precise accommodation an employee requests, but must only offer an accommodation that allows the employee to fully perform the essential functions of a position offered by the employer. Syl. Pt. 1, Skaggs v. Elk Run Coal Co., Inc., 488 S.E.2d 561 (W.Va. 1996).

Calef asserts that FedEx should have returned her to the Dock Service Manager position that she held from October 25, 2003 to

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

February 23, 2004.[3]  FedEx, however, contends that reassignment to the Dock Service Manager position was not a reasonable accommodation because that position was held by Chris Davis ("Davis") as of the date of Calef's injury.

If an employee cannot be accommodated in his or her current position, however it is restructured, then an employer must inform the employee of potential job opportunities within the company and, if requested, consider transferring the employee to fill an open position. Syl. Pt. 4, Skaggs v. Elk Run Coal Co., Inc., 478 S.E.2d 561 (W.Va. 1996).  However, an employer is not required to transfer or fire other employees to accommodate an employee with a disability. Skaggs v. Elk Run Coal Co., 479 S.E.2d at 577.

Calef states that she and Davis had divided the duties of a Service Manager in the past because Clarksburg historically had only one Service Manager.  At that time, she was a Service Manager III and performed the dock duties while Davis was a Service Manager I and performed Package and Delivery Duties.  Because their duties

---

[3] FedEx places great emphasis on the fact that Calef never requested this specific accommodation at any time prior to or after it placed her on medical leave. Prior to being placed on medical leave, however, Calef provided FedEx with three medical excuses concerning her medical restrictions and advised her direct supervisor that driving and lifting were aggravating her hand injury.  Therefore, FedEx knew of Calef's physical limitations and had an affirmative obligation to determine whether a reasonable accommodation existed to assist her in performing the duties of her position.  Skaggs v. Elk Run Coal Co., Inc., 478 S.E.2d at 575.

had been shuffled in the past, Calef asserts that FedEx could have shuffled their duties again to accommodate her limitations. Also, Calef asserts that her lateral transfer to the Package and Delivery Service Manager was not supposed to become effective until March 2004 despite the fact that Ryan required her to perform the Package and Delivery duties beginning on January 24, 2007. Thus, she contends that she could have simply remained in the Dock Service Manager position while Davis remained in the Package and Delivery Service Manager position.

FedEx also contends that the Dock Service Manager position required Calef to be able to perform the task of lifting and to have full use of both hands; thus, given her medical limitations, Calef could not have performed the essential functions of the Dock Service Manager position. The WVHRA does not require an employer to eliminate essential functions of a job as a means of fulfilling its duty to provide a reasonable accommodation. Williams v. Charleston Area Medical Center, Inc., 592 S.E.2d 794, 799-800 (W.Va. 2003). Moreover, an employer is not required to create a "make-work job" or retain an employee that cannot perform the essentials functions of any position offered by the employer. Skaggs v. Elk Run Coal Co., 479 S.E.2d at 579.

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

FedEx has produced two written job descriptions for the Service Manager I Dock Satellite position. The written description, dated June 1, 2006, expressly states that lifting up to 50 pounds was required less than 33% of the time, lifting up to 25 pounds was required 33% to 66% of the time and lifting up to 10 pounds was required greater than 66% of the time. The written job description dated December 8, 2003 expressly stated that "the employee must occasionally lift and/or move up to 25 pounds.

Calef asserts that when she worked in the Dock Service Manager position the package handlers who worked for her did the lifting tasks. It appears that Calef is arguing the Service Manager III job description, which does not include a lifting requirement, applied to her in both the Dock Service Manager and Package and Delivery Service Manager positions. Based on this, a question of material fact exists as to whether the Dock Service Manager position was available and, if it was available, whether Calef was able to perform the essential functions of that position.

Finally, FedEx asserts that the WVHRA only requires that a reasonable accommodation be given to individuals with actual disabilities; thus, since she was not disabled, it was not obligated to provide Calef a reasonable accommodation so that she could perform the essential functions of any job at FedEx.

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

Because West Virginia law does not expressly resolve the issue, FedEx relies on federal appellate court decisions interpreting the Americans With Disabilities Act ("ADA") to support its contention. Calef, however, argues that requiring an employer to provide an accommodation to an employee whom it regards as disabled is consistent with the plain language of the WVHRA.

The federal circuits are clearly divided on this precise issue. The Fifth, Sixth, Eighth and Ninth circuits hold that employees who are merely regarded as disabled under the ADA are not entitled to reasonable accommodations. Kaplan v. City of North Las Vegas, 323 F.3d 1226, 1232-33 (9th Cir. 2003); Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999); Weber v. Strippit, Inc., 186 F.3d 907, 915-17 (8th Cir. 1999); Newberry v. E. Tex. State Univ., 161 F.3d 276, 280 (5th Cir. 1998). Nevertheless, the First, Third, Tenth and Eleventh circuits hold that employees who are regarded as disabled under the ADA are entitled to reasonable accommodations. Kelly v. Metalics West, Inc., 410 F.3d 670 (10th Cir. 2005); D'Angelo v. Conagra Foods, Inc., 422 F.3d 1220 (11th Cir. 2005); Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751 (3d Cir. 2004); Katz v. City Metal Co., Inc., 87 F.3d 26 (1st Cir. 1996). Significantly, the Fourth and Circuit has declined to reach the issue, but has recognized the

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

split in authority.  <u>Betts v. Visitors of University of Va.</u>, 145

Fed. Appx. 7, 15 (4th Cir. 2005).[4]

The WVHRA considers an individual to be disabled when she is

regarded or perceived as having an impairment which substantially

limits a major life activity, W.Va. Code § 5-11-3(m)(3); W.Va.

Code. St. R. § 77-1-2.1.3, and  makes it unlawful for an employer

to discriminate against an individual who "is able and competent to

perform the services required even if such individual is . . .

disabled."  W.Va. Code § 5-11-9.  In <u>Skaggs v. Elk Run Coal Co.</u>,

the West Virginia Supreme Court of Appeals inferred from the

statutory language of the WVHRA that employers have an affirmative

obligation to provide reasonable accommodation for disabled

individuals. 479 S.E.2d at 574. Significantly, in <u>Skaggs</u>, the West

Virginia Supreme Court of Appeals further stated:

> Thus, the ADA and our Human Rights Act
> prescribe strong medicine to cure the social
> maladies of intentional and unnecessary
> denials of job opportunities to persons with
> disabilities.  The medicine works through the
> laws' natural hortatory and educational effect
> and through their remedial provisions that
> empower courts to correct unlawful practices,
> make their victims whole, and deter other acts

---

[4] Similarly, the Second and Seventh Circuits have recognized, but declined
to decide this issue.  <u>Shannon v. New York City Transit Authority</u>, 332 F.3d 95,
104 n.3 (2d Cir. 2003); <u>Cigan v. Chippewa Falls School District,</u> 388 F.3d 331,
335 (7th Cir. 2004).

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

> of discrimination by attaching to them serious
> economic consequences. In applying our
> statutes, we remain mindful that, as a
> remedial law, it should be liberally construed
> to advance those beneficent purposes.

Skaggs, 479 S.E.2d at 574.

When liberally construed, the express language of the WVHRA obligates an employer to provide a reasonable accommodation to an employee whom it perceives to be disabled. Specifically, neither the Act nor West Virginia case law interpreting the Act distinguishes between the obligations owed to an employee who is actually disabled and an employee who is perceived by the employer as disabled. Therefore, an employer who has an unsupported or faulty perception of an employee's abilities must be prepared to accommodate the artificial limitations created by its own faulty perception. Accordingly, the WVHRA requires FedEx to determine whether a reasonable accommodation existed that would allow Calef to perform the essential functions of any of its jobs based on what it believed her limitations to be.

### C. Judicial Estoppel

FedEx asserts that Calef should be judicially estopped from bringing a disability discrimination claim under the WVHRA because

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

she previously represented to the Social Security Administration that she was "unable to work because of her disabling condition." In Cleveland v. Policy Management Systems Corporation, 526 U.S. 795, 798 (1999), the United States Supreme Court held that pursuit and receipt of disability benefits from the Social Security Administration does not automatically estop a plaintiff from pursuing a claim under the ADA. There, the plaintiff began working at Policy Management Systems and subsequently suffered a stroke which affected her concentration, memory and language skills. Id. at 798-799. A few weeks after suffering the stroke, the plaintiff filed an application for Social Security Disability Benefits ("SSDI"), stating that she was unable to work. Just over two months after filing her SSDI application, the plaintiff's condition improved and she returned to work at Policy Management Systems.

After working for approximately three months, Policy Management Systems fired the plaintiff four days after the Social Security Administration denied her SSDI application. After her termination, the plaintiff requested reconsideration of her SSDI application and presented new evidence about the extent of her injuries. More than a year after being terminated by her employer, she was awarded SSDI benefits retroactive to the day of her stroke. One week before receiving the SSDI award, however, the plaintiff

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT'S SUMMARY JUDGMENT MOTION**

filed her ADA claim, alleging that her employer terminated her
without accommodating her disability. Id.

In Cleveland, the plaintiff stated to the Social Security
Administration: "I am unable to work due to my disability," "I
continue to be disabled," and that she "could no longer do the job"
in light of her "condition." Id. at 799. The Court characterized
the plaintiff's statements as legal conclusions under the Social
Security Act and distinguished those legal conclusions from other
factual conclusions, stating,

> This case does not involve . . . directly
> conflicting statements about purely factual
> matters, such as "The light was red/green," or
> "I can/cannot raise my arm above my head." A
> [Social Security Administration]
> representation of total disability differs
> from a purely factual statement in that it
> often implies a context-related legal
> conclusion, namely, "I am disabled for
> purposes of the Social Security Act." And our
> consideration of this latter kind of statement
> consequently leaves the law related to the
> former, purely factual, kind of conflict where
> we found it.

Id. at 802.

The Court, however, concluded that the plaintiff could not
ignore the apparently contradictory statements she had made to the
Social Security Administration, and could not simply contradict her

prior statements without explaining the contradiction or attempting

to resolve the disparity.  Id. at 805-806.  Specifically, the Court

stated:

> When faced with a plaintiff's previous sworn
> statement asserting "total disability" or the
> like, the court should require explanation of
> any apparent inconsistency with the necessary
> elements of an ADA claim.  To defeat summary
> judgment, that explanation must be sufficient
> to warrant a reasonable juror concluding that,
> assuming the truth of, or the plaintiff's good
> faith belief in, the earlier statement, the
> plaintiff could nonetheless "perform the
> essential functions" of her job, with or
> without "reasonable accommodations."

Id. at 807.

The plaintiff, in Cleveland, offered two reasons to explain

the inconsistency between her SSDI statements and her ADA claim.

Id. First, she stated that the representations made to the Social

Security Administration were made in a forum that does not consider

the effect of reasonable accommodations on the ability to work.  Id.

Second, she stated that her representations to the Social Security

Administration were accurate statements if examined in the time

period in which they were made.  Id.  The Court found these reasons

sufficient to create a question of fact for the jury.  Id.

In the instant case, Calef asserts that the only tasks she

could not perform were lifting more than 20 pounds on a regular

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANT'S SUMMARY JUDGMENT MOTION

basis and delivering packages. She further contends that these tasks were not included in her job description. Moreover, Calef asserts that she did not require medical leave because she was able to work at FedEx.

FedEx, however, points out that Calef previously represented to the Social Security Administration that she "became unable to work because of [her] disabling condition on February 24, 2004," and that she represented that, as a Package and Delivery Service Manager, her duties including frequent lifting of 25 pounds and lifting up to 50 pounds. She also stated to the Social Security Administration that her job duties included delivering packages and loading vans.

In an effort to explain the inconsistency between her present allegations and her past representations, Calef contends that she was only unable to work because Ryan required her to perform tasks that were not actually included in her job description. She also asserts that the Social Security Administration did not request an actual job description or a summary of the essential functions of her position. Rather, it simply asked what she did during a day. Thus, Calef contends, she included the tasks of lifting and delivering that Ryan required her to do but that were not essential functions of her position. Calef points out that, based on these

### ORDER GRANTING-IN-PART AND DENYING-IN-PART
### DEFENDANT'S SUMMARY JUDGMENT MOTION

tasks, the Social Security Administration concluded that she was a van driver.

Calef further contends that her prior representations concerning her pain and limitations are consistent with her present claims, noting that she only applied for SSDI benefits because FedEx's long-term disability plan required her to do so.  As in Cleveland, Calef's explanation raises a factual question, and a possible credibility issue, that a jury must resolve.  Thus, the Court concludes that Calef is not estopped from asserting that she is able and competent to perform  the duties of her job.

### IV. CONCLUSION

For the preceding reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** FedEx's motion for summary judgment (dkt no. 127) and **DISMISSES WITH PREJUDICE** Calef's sex discrimination claim. It is **SO ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: July _____ *26* _____, 2007.

_Irene M. Keeley_
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE