# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TAMMY L. CALEF,**

        **Plaintiff,**

**v.**                **// CIVIL ACTION NO. 1:06CV47**
                                  **(Judge Keeley)**

**FEDEX GROUND PACKAGE SYSTEM, INC.,**

        **Defendant.**

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

On July 26, 2007, the Court held a final pretrial conference in this case at which it heard argument on the parties' motions <u>in limine</u> concerning payments from collateral sources and mitigation of damages. With respect to the collateral source issue, the plaintiff, Tammy Calef ("Calef"), asserted that the short-term and long-term benefits she received after being placed on medical leave are additional compensation in the form of a fringe benefit that should not be offset from any back pay damages to which she may be entitled. The defendant, FedEx Ground Package System, Inc. ("FedEx"), argued that Calef's disability benefits were not derived from a collateral source because they did not arise from a source wholly independent of her employer, the alleged tortfeasor in this case.

Regarding mitigation of damages, FedEx argued that any back pay Calef may be due should be limited to the time after she was

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

placed on medical leave until she applied to law school. It contended that Calef failed to mitigate her damages after that date. Calef, however, insisted that she consistently sought reinstatement with FedEx, as well as comparable employment with other businesses. She explained that she was unsuccessful and had no choice other than to enroll in law school in order to obtain future employment comparable to her position at FedEx. At the final pretrial conference, the Court sua sponte questioned whether Calef had any duty to mitigate damages inasmuch as, in the view of both parties, she remains an employee of FedEx.

Also on the issue of damages, Calef advised that she does not seek reinstatement, but, rather, front pay. To that end, she and FedEx disagreed as to whether the jury or the Court should decide that issue.

Following oral argument, the Court offered the parties an opportunity to submit supplemental briefs on the questions raised during the final pretrial conference. The parties accepted the offer and submitted supplemental memoranda specifically addressing the applicability of the collateral source rule, determination of front pay damages, and the duty to mitigate damages. These matters, therefore, are ready for decision.

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

### I. Collateral Source

After being placed on medical leave by FedEx, Calef applied for and received short-term disability benefits in the amount of her full salary.  After those short-term benefits expired in August 2004, she applied for and received long-term disability benefits from The Hartford.  Calef received those benefits from August 2004 until February 2006.

Calef contends that the collateral source rule precludes FedEx from introducing any evidence or arguing that her damages for back pay should be reduced by the amount of disability benefits she received.  FedEx, however, argues that the disability benefits Calef received were wholly derived from it, and, therefore, do not constitute a collateral source.

Because the collateral source rule is a rule of substantive law, the Court must look to West Virginia law to determine how to apply the rule to the present facts.  <u>Sims v. Great American Life Ins. Co.</u>, 469 F.3d 870 (10th Cir. 2006);  <u>Fitzgerald v. Expressway Sewerage Const.,</u> Inc., 177 F.3d 71 (1st Cir. 1999); <u>Wolfe v. Gilmore Mfg. Co.</u>, 143 F.3d 112 (8th Cir. 1998); <u>Town of East Troy, v. Soo Railroad Line Co</u>, 653 F.2d 1123 (7th Cir. 1980); <u>Mitchell v. Hayes</u>, 72 F.Supp.2d 635 (W.D.Va. 1999).  The West Virginia Supreme Court

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE**
**AT FINAL PRETRIAL CONFERENCE**

of Appeals has held that "[t]he collateral source rule was established to prevent the defendant from taking advantage of payments received by the plaintiff as a result of his own contractual arrangements entirely independent of the defendant." Ratlief v. Yokum, 280 S.E.2d 584, 590 (W.Va. 1981); Ellard v. Harvey, 231 S.E.2d 339, 343 (W.Va. 1976). In determining whether the collateral source rule applies, a court looks to not only the source of the income but also its character. Powell v. Wymoming Cablevision, Inc., 403 S.E.2d 717, 725 (W.Va. 1991).

Consistent with this perspective, in Jones v. Laird Foundation, Inc., 195 S.E.2d 821 (W.Va. 1973), West Virginia's highest court held that the collateral source rule applies to workers' compensation benefits. Similarly, in Orr v. Crowder, 315 S.E.2d 593, 610 (W.Va. 1984), the court held that, under the collateral source rule, unemployment benefits may not be used to reduce an award of damages.

Despite decisions on the applicability of the collateral source rule in both the workers' compensation and unemployment benefits context, West Virginia has not decided whether, in a case where the employer is the tortfeasor, the collateral source rule applies to employee benefits provided under a disability insurance

4

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

policy paid for by the employer.   Several federal courts have decided this precise issue, however, and, like West Virginia, have looked to the source as well as the character of the benefits to determine whether disability benefits provided by an employer are a collateral source in a case where the employer is the tortfeasor. See <u>Davis v. Odeco</u>, 18 F.3d 1237, 1244 (5th Cir. 1994); <u>Folkestad v. Burlington Northern, Inc.</u>, 813 F.2d 1377, 1381 (9th Cir. 1987); <u>see also</u> <u>Webber v. International Paper Company</u>, 307 F.Supp.2d 119 (D.Me. 2004); and <u>Reed v. E.I. Du Pont De Nemours and Company</u>, 109 F.Supp.2d 459 (S.D.W.Va. 2000).

"In determining whether a benefit plan that is wholly or partly funded by the tortfeasor is a collateral source, the ultimate inquiry remains whether the tortfeasor established the plan as a prophylactic measure against liability." <u>Davis</u>, 18 F.3d at 1244.   The Federal courts that have considered this issue have recognized certain factors that to help distinguish fringe benefits from benefits intended to respond to legal liability.   These factors include:

> (1) whether the employee makes any contribution to funding of the disability payment; (2) whether the benefit plan arises as the result of a collective bargaining agreement; (3) whether the plan and payments

ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE

> thereunder cover both work-related and
> nonwork-related injuries; (4) whether payments
> from the plan are contingent upon length of
> service of the employee; and (5) whether the
> plan contains any specific language
> contemplating a set-off of benefits received
> under the plan against a judgment received in
> a tort action.

Id. (citing Allen v. Exxon Shipping Co., 639 F.Supp. 1545, 1547-48
(D.Me. 1986)).

In Davis, the plaintiff sued his employer for exposing him to
hydrocarbons in the workplace, and sought damages for his alleged
injuries. He had received medical and disability benefits from a
group insurance plan that was established and largely funded by his
employer to compensate employees for nonwork-related accidents and
illnesses. Id. at 1240. The trial court ruled that the plan was
a collateral source because the plaintiff contributed 10% to the
funding of the "Major Medical" portion of the plan, the plan
applied exclusively to nonwork-related injuries, and the plan
lacked explicit language requiring its benefits to offset any
liability incurred by the employer. Id. at 1245. Although the
district court noted that the employer had funded 90% of the "Major
Medical" portion of the plan and 100% of the "Accident and
Sickness" portion of the plan, that the plan did not arise from a

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

collective bargaining agreement, and that the plan did not base medical and disability payments upon length of service, id. at 1245 n. 29, after weighing all the factors, it determined that the plan was a collateral source.

The Fifth Circuit upheld the trial court's decision, stating that the plan's exclusive application to nonwork-related injuries strongly supported the conclusion that the employer's intent was not to reduce its own liability. Id. Significantly, it found the plan "closely akin to a fringe benefit-part-and-parcel of its employees' compensation package." Id.

In Webber v. International Paper, 307 F.Supp.2d at 124-25, the employer self-insured its long-term disability benefits plan; however, employees such as the plaintiff could exercise an option to contribute additional premiums for additional coverage. Id. at 125. The plan covered both work-related and nonwork-related injuries, and lacked specific language contemplating a set-off of benefits received against a judgment rendered in favor of the employee against the employer. These factors all weighed in favor of a finding that the plan was a fringe benefit. Id.

On the other hand, there was no indication as to whether the plan arose as a result of a collective bargaining agreement.

Moreover, payments under the plan were not contingent upon length of service.  After carefully weighing all these factors, the court concluded that "indemnification of the employer for liability was not the dominant purpose of the plan, and that the long-term disability policy in question [was] properly considered a fringe benefit."  Id.

Finally, in Reed v. E.I. Du Pont, 109 F.Supp.2d at 467, the plaintiff sued his employer, Dupont, under West Virginia's deliberate intent statute, alleging that his employer had exposed him to butylisocyanate with knowledge of its hazards.  He had received benefits under an "Incapability Retirement Pension" and a "Total and Permanent Income Disability Plan," both of which were fully funded by Dupont.

The district court initially noted that, under the structure of these plans, not allowing DuPont to set off these disbursements would penalize it twice for the same items of damages. Nevertheless, the court looked beyond the fact that DuPont was the source of the benefits to their character in order to determine whether the benefits were fringe benefits.  Id. at 468.  It considered the following facts:

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

1) DuPont solely funded its disability plans, which were not the result of a collective bargaining agreement. This factor suggested that the plans were not fringe benefits;

2) DuPont's plans covered both work and nonwork-related injuries and required some duration of employment to qualify for benefits. These factors suggested that the plans were a fringe benefit; and

3) The plans specifically provided for a set-off of benefits received from other sources. DuPont's "Total and Permanent Income Disability Plan" provided benefits to the extent that the employee's benefits from other sources did not equal 60% of the employee's normal monthly salary. <u>Id.</u> at 468. The payments also were offset by social security and workers' compensation benefits, as well as benefits under the "Incapability Retirement Pension." <u>Id.</u> These set-off provisions were dispositive and the court concluded that Dupont intended the benefits as indemnification against any liability to its employees.

Applying the factors considered in <u>Davis</u>, <u>Webber</u> and <u>Reed</u> here, the Court finds that: (1) Calef did not contribute to the short-term disability plan of FedEx, but, as the plaintiff in <u>Webber</u>, had the option and opted to contribute to the employee

9

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

long-term disability plan; (2) like the plan in <u>Davis</u>, FedEx's short-term and long-term disability plans covered only nonwork-related injuries; (3) both plans required two months of continuous service before an employee became eligible for coverage, and the length of time for which an employee receives 100% of her salary under the short-term disability plan was based on the length of service; and (4) neither plan arose from a collective bargaining agreement. When these factors are viewed in light of FedEx's own characterization of these plans as an employee's "Hidden Paycheck," the evidence weighs in favor of a finding that the disability benefits received by Calef are fringe benefits.

Nevertheless, there is another factor to consider, that is whether the plan specifically contemplated a set-off of benefits received against a judgment recovered against FedEx in a tort action. FedEx's long-term and short-term disability plans provide that all benefits received by an employee are to be reduced by any other benefits obtained through federal and state disability programs, such as workers' compensation and social security disability. Moreover, the long-term disability plan defines "Other Income Benefits" as "any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:

10

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings." FedEx contends that these set-off provisions are similar to the provisions in <u>Reed</u> and are dispositive on the indemnification issue in this case.

While the court in <u>Reed</u> did find that a general set-off provision in DuPont's plans established the employer's intent for indemnification, 109 F.Supp.2d at 468, <u>Davis</u> and <u>Webber</u> both held that the absence of "explicit language requiring plan benefits to offset any liability incurred [by the employer]" or "specific language contemplating set off of benefits received against a judgment rendered in favor of the employee against the employer" precluded a finding of intended indemnification. <u>Davis</u>, 18 F.3d at 1245; <u>see</u> <u>also</u> <u>Webber</u>, 307 F.Supp.2d at 125.

The analysis in the case of <u>Allen v. Exxon Shipping Co.</u>, 639 F.Supp. 1545, 1547-48 (D.Me. 1986)), which is cited in <u>Davis</u>, is helpful. There, the set-off provision at issue specifically provided for the employer's discretionary denial of benefits to an employee who "is paid a sum by the employer under a judgment for personal injuries or for maintenance and cure while benefits are paid or payable under this plan, until [such time as] denied

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE**
**AT FINAL PRETRIAL CONFERENCE**

benefits that would have been payable to such person equal the total of such sum so paid by the employer." Approving the specificity of the plan's language, <u>Allen</u> held that "[the] provision clearly evidence[d] an intent by the employer 'to make a voluntary disability plan supplemental to sums recovered under the FELA' or other sources of tortious recovery."

Neither of FedEx's disability plans contain such explicit language to establish clearly its intent of indemnification against liability for disability discrimination. Both plans lack any express language contemplating a set-off of benefits provided under the plans against a judgment obtained by an employee like Calef against FedEx, whether in a general tort action or, as here, a discrimination action. FedEx's setoff provisions only provide generally for the recoupment of overpayment of benefits and subrogation, not for indemnification against the type of liability FedEx faces here. This case, therefore, is distinguishable from <u>Reed</u> and the Court concludes that, on balance, the evidence favors a finding that the disability benefits FedEx paid to Calef were fringe benefits.

Because the disability benefits paid under FedEx's short-term and long-term disability plans were fringe benefits, evidence of

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

the amount of such benefits is excludable at trial pursuant to the collateral source rule. The Court, therefore, **GRANTS** Calef's motion _in limine_ regarding collateral source benefits (dkt no. 148) and **DENIES** Paragraphs 20, 21 and 23 of FedEx's motion _in limine_ (dkt no. 146).

## II. Mitigation of Damages

Calef has asserted a "regarded as disabled" discrimination claim under the West Virginia Human Rights Act ("WVHRA"), alleging that FedEx regarded her as disabled, forced her to take medical leave and then refused to allow her to return to work despite the fact that she was able to perform the duties of her position at FedEx. Based on her "regarded as disabled" discrimination claim, Calef seeks damages in the form of back pay from February 24, 2004, when FedEx placed her on medical leave, until the present. FedEx seeks to preclude any evidence of lost earnings beyond the date when Calef applied to law school, however, arguing that Calef voluntarily removed herself from the job market and from reinstatement as a FedEx employee. FedEx contends that, as a matter of law, Calef failed to mitigate her damages after the date she applied to law school.

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

After allegedly being placed on medical leave, Calef asserts that she sought to return to her employment with FedEx because she planned to retire with the company.  When she realized that FedEx would not re-employ her unless she had no physical limitations, she unsuccessfully sought similar employment in the local area for more than two years.  Only after that did she seek admission to law school.  She notes that, while attending law school, she has worked part-time at Old Navy and also unsuccessfully sought a part-time position with Westlaw as well as a summer paid internship.

In <u>Miller v. AT&T</u>, 250 F.3d 820, 838 (4th Cir. 2001), the Fourth Circuit Court of Appeals held that a plaintiff who enrolled in school after a diligent but unsuccessful search for employment did not fail to mitigate damages.  Specifically, "the central question a court must consider when deciding whether a student-claimant has mitigated her damages is whether an individual's furtherance of [her] education is inconsistent with [her] responsibility to use reasonable diligence in finding other suitable employment."  <u>Id.</u> at 838 (quoting <u>Dailey v. Societe Generale</u>, 108 F.3d 451, 456-57 (2d 1997)).

During the final pretrial conference, the Court ruled that whether Calef diligently searched for employment prior to applying

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

for law school is a jury question.  Then, although not raised by the parties in their motions in limine, the Court inquired as to whether Calef had a duty to seek comparable employment while still employed by FedEx.  In her supplemental memorandum, Calef argues that she had no duty to mitigate because she is still "technically" a FedEx employee.  FedEx did not further address the issue in its supplemental brief, but apparently maintains that, while still an employee, Calef had a duty to mitigate her damages by seeking another job.

In Orr v. Crowder, 325 S.E.2d 593, 609 (W.Va. 1984), a librarian at a local state college sued the college's president and dean of academic affairs under 42 U.S.C. § 1983.  Id. at 598.  The plaintiff was initially hired in 1971 and her employment continued for five years under one-year contracts until the spring of 1976 when she was given a terminal contract for the following year.  Id. After that, she filed a lawsuit alleging that the defendants had violated her procedural due process and free speech rights.  Id.

In Crowder, the defendants asserted that the plaintiff had failed to mitigate her damages by not seeking other employment after receiving notice of the 1976-77 terminal contract.  Id. at 351.  At trial, however, the plaintiff testified that, during the

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

time she was actually unemployed, she'd had a considerable number of job interviews but was unable to secure another position until January, 1978. _Id._ Based on these facts, the West Virginia Supreme Court of Appeals concluded that the evidence did not support the defendant's claim that the plaintiff had failed to mitigate her damages. _Id._ The court specifically stated:

> The record discloses that Mrs. Orr did not make any job applications during the year of her terminal contract because she believed that she would eventually be reinstated to her position. We fail to see how Mrs. Orr can be accused of failing to fulfill her duty to mitigate damages by not applying for other jobs at a time in which she was still employed.

_Id._

Several years after deciding _Crowder_, in _Paxton v. Crabtree_, 400 S.E.2d 245, 252(W.Va. 1990), the court considered an appeal from the finding of the West Virginia Human Rights Commission that an employee had no duty to mitigate her damages because she had a "reasonable expectation of being reinstated." The court narrowed its holding in _Crowder_ and clarified that "a reasonable expectation of being reinstated" does not alleviate a plaintiff's duty to mitigate damages. _Id._

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

Here, the parties agree that FedEx has not terminated Calef's employment and that Calef has never resigned. In point of fact, in its summary judgment motion, FedEx concurred that Calef presently remains on a leave of absence despite the fact that she has not worked since February 24, 2004. Thus, although the West Virginia Supreme Court of Appeals has not considered the exact question presented here, the general principle from <u>Crowder</u> applies: An employee who is still employed has no duty to mitigate damages by seeking comparable employment. Calef, therefore, had no duty to mitigate her damages.

### III. Front Pay

In <u>Dobson v. Eastern Associated Coal Corp.</u>, 422 S.E.2d 494, 501 (W.Va. 1992), the West Virginia Supreme Court of Appeals held that, although not specifically provided for by statute, a plaintiff bringing a civil suit under the West Virginia Human Rights Act ("WVHRA") may recover all damages sounding in tort, including an award of front pay. <u>Id.</u> at 501-02. Furthermore, in West Virginia, it is for the jury to decide the issue of front pay damages in a WVHRA case. <u>Dobson</u>, 422 S.E.2d at 501-02; <u>Casteel v. Consolidation Coal Co.</u>, 383 S.E.2d 305, 311 (W.Va. 1989); <u>Perilli v. Board of Education of Monongalia County</u>, 387 S.E.2d 315 (W.Va.

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

1989)(recognizing the proper role of the jury in calculating front pay as opposed to in deciding on reinstatement)); see also Thompson v. Town of Alderson, 600 S.E.2d 290, 292-93 (W.Va. 2004).

In the Fourth Circuit, however, the decision whether to award front pay damages and, if so, in what amount is an issue for the court because front pay is considered an equitable remedy. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 307 (4th Cir. 1998); Duke v. Uniroyal, 928 F.3d 1413, 1424 (4th Cir. 1991). FedEx, therefore, contends that this Court, not the jury, should decide the question of front pay because federal law governs the issue of who decides the matter. Simler v. Conner, 372 U.S. 221 (1963); Byrd v. Blue Ridge Rural Electric Co-op, Inc., 356 U.S. 525 (1958).

The Fourth Circuit Court has held that the allocation of fact-finding responsibilities is a procedural matter governed by federal law. Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 (4th Cir. 1992)(citing Burcham v. J.P. Stevens & Co., 209 F.2d 35 (4th Cir. 1954)).  It has also recognized, however, that the division of responsibilities in the federal context "is largely informed by the principles embodied in the Seventh Amendment." Johnson, 974 F.3d at 1416.

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

As FedEx recognized in its supplemental brief, "[o]nly through a holding that the jury trial right is to be determined according to federal law can uniformity in its exercise which is demanded by the Seventh Amendment be achieved." Simler, 372 U.S. at 610-611. The United States Supreme Court has specifically recognized that "[a]n essential characteristic of [the federal] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence – if not command – of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury." Byrd, 356 U.S. at 538.

It is important to note, however, that in Simler and Byrd the federal rule provided for a jury determination of an issue, but the state rule did not. In those cases, therefore, the Supreme Court confronted a Seventh Amendment question because the states are not bound by the United States Constitution to give the same degree of deference to jury decisions as are federal courts.

The instant case presents a significantly different question inasmuch as West Virginia provides the right to a jury determination of front pay damages but Fourth Circuit case law does not. Therefore, the Court would not be in conflict with the

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

Seventh Amendment were it to apply West Virginia law and send the issue of front pay damages to the jury.

It is notable that FedEx does not argue that insufficient facts exist here to carry the question of front pay damages to the jury, but rather that, as a matter of law, that issue must be resolved by the Court in accord with Fourth Circuit case law. It relies on Herron v. Southern Pacific Co., 283 U.S. 91, 94 (1931), a diversity suit in which the federal court directed a verdict for the defendant on the issue of contributory negligence, despite a state rule requiring a jury determination of that issue.

Herron is distinguishable from the present case, however, because a state rule or policy directing that all issues of fact and law be tried by a jury is in direct conflict with Rules 50 and 56 of the Federal Rules of Civil Procedure.  No such conflict exists here, however. Should Calef present sufficient facts at trial for consideration of an award of front pay damages, the Court would not be ignoring the standards set forth in the Federal Rules of Civil Procedure by allowing the front pay question to be decided by the jury.

The Federal Rules of Civil Procedure provide for uniformity of procedural decisions throughout the federal court system.  Hanna v.

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

Plumer, 380 U.S. 460, 472-73 (1965). Of significance to the outcome here is the fact that federal circuit courts themselves are split as to whether a jury or the court should decide the issue of front pay damages.  The Third, Fifth, Sixth and Ninth Circuits have all held that a jury may determine the amount of front pay.  See Hansard v. Pepsi-Cola Metro. Bottling Co., 865 F.2d 1461, 1470 (5th Cir.), cert. denied, 493 U.S. 842 (1989); Fite v. First Tennessee Prod. Credit Ass'n, 861 F.2d 884, 893 (6th Cir.1988); Cassino v. Reichhold Chem., Inc., 817 F.2d 1338, 1347 (9th Cir. 1987), cert. denied, 484 U.S. 1047 (1988); Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir.1985), cert. denied, 474 U.S. 1057 (1986).  The Second, Fourth, Seventh, Eighth and Tenth Circuits, in contrast, have held that the question of front pay damages should be decided by the court.  Newhouse v. McCormick & Co., 110 F.3d 635 (8th Cir. 1997); Fortino v. Quasar Co., 950 F.2d 389, 398 (7th Cir. 1991); Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1426 (10th Cir. 1991); Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th Cir.), cert. denied, 502 U.S. 963 (1991); Dominic v. Consol. Edison Co. of New York, Inc., 822 F.2d 1249, 1257 (2d Cir. 1987).  Thus, there is no procedural uniformity in the federal courts on this issue.

## ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
## AT FINAL PRETRIAL CONFERENCE

Because application of West Virginia law on front pay damages in this WVHRA case would not be inconsistent with the significant federal interest of maintaining a cohesive, uniform system for the administration of justice, the Court may consider the importance of promoting uniformity in WVHRA cases, whether filed in state or federal court. Under the WVHRA, claimants have the option of filing their discrimination claims with the West Virginia Human Rights Commission or the state circuit courts. W.Va. Code § 55-11-13; Syl pt. 1, Price v. Boone County Ambulance Authority, 337 S.E.2d 913 (W.Va. 1985). Because claimants have this option under the WVHRA, West Virginia law allows for the recovery of the full scope of tort damages. Dobson, 422 S.E.2d at 501.

Moreover, the West Virginia Supreme Court of Appeals has consistently held that a plaintiff in a WVHRA case deserves a jury determination on all issues except reinstatement, which it views solely as an equitable remedy. Dobson, 422 S.E.2d at 501-02; Perilli v. Board of Education of Monongalia County, 387 S.E.2d 315 (W.Va. 1989). Specifically, "[w]here relief to be awarded is money damages, even though the underlying claim is historically one in equity, then the ordinary characterization of the monetary award is as a legal remedy, to which the right to trial by jury attaches."

**ORDER CONCERNING DAMAGES ISSUES HELD IN ABEYANCE
AT FINAL PRETRIAL CONFERENCE**

Thompson v. Town of Alderson, 600 S.E.2d 290, 292-93 n. 5 (W.Va. 2004).

After carefully considering the disparate views of West Virginia and federal courts on the issue of who should decide the question of front pay damages, the Court concludes that the application of state law in this case would promote West Virginia's efforts to provide the fullest right to a jury trial to claimants in WVHRA cases that statute, as well as promote uniformity among cases filed under the WVHRA. Id.  Accordingly, if the plaintiff makes out a prima facie case at trial on the issue of front pay damages, the Court will allow the jury to decide that issue.

It is **SO ORDERED.**

The Clerk is directed to transmit copies of this order to counsel of record.

DATED: August 31, 2007.


                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE