# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

**TAMMY L. CALEF,**

       *Plaintiff*,

*vs*.                                                                         Civil Action No. 1:06CV47

**FEDEX GROUND PACKAGE SYSTEM, INC.,**

       *Defendant*.

## ORDER/OPINION

On the 22nd day of October, 2007, Plaintiff, though counsel, filed a Motion for Leave to Reopen Discovery for the Sole Purpose of Determining Whether the Defendant's September 20, 2007, Offer of Reinstatement was Made in Good Faith [Docket Entry 182]. On the 5th day of November, 2007, this motion was referred to the undersigned by the Chief United States District Judge [Docket Entry 184]. On the 8th day of November, 2007, Defendant, through counsel, filed its Reply in Opposition to Plaintiff's Motion to Reopen Discovery [Docket Entry 185]. On the 13th day of November, 2007, Plaintiff filed her "Reply Memorandum in Further Support of Her Motion for Leave to Reopen Discovery" [Docket Entry 187]. On November 14, 2007, came Plaintiff through her counsel, Georgia Lee Gates, and came Defendant through its counsel J. John Meyer, for telephonic hearing on Plaintiff's Motion.

Plaintiff's Motion states as follows:

1. By Order dated August 31, 2007, this Court rejected the Defendant's efforts to minimize its back pay and front pay damages by arguing that Ms. Calef, through her attendance at law school, had failed to mitigate such damages. In addition, the Court rejected the Defendant's arguments that it was entitled to an offset from any back pay award Ms. Calef might receive equal to the amount of short-term and long-term disability benefits received by her;

2. Prior to the entry of this order, the Defendant failed to make an unconditional offer of reinstatement to Ms. Calef although she had both before suit and for may months post-suit

requested that the Defendant identify a specific position to which she might be reinstated;

3. On September 20, 2007, the Defendant through Steve Hickman, directly contacted Ms. Calef and advised her in a letter that:

> FedEx Ground has an immediate opening for a P&D Service manager . . . . FedEx Ground unconditionally offers you this position. You would be designated a Service Manager III with no loss of seniority for benefit purposes and at the rate of pay appropriate to a Service Manager III with your level of experience and seniority. If you are interested in this position and would like further information, please contact me no later than Thursday, September 27, 2007. I need to hear form [sic] you by then because as in (sic) indicated , this is an immediate opening. It needs to be filled without delay.

. . . .

6. On September 20, 2007, [Plaintiff's] counsel made arrangements with defendant's counsel for Ms. Calef to visit the ground facility the following day, September 21, 2007. On September 26, 2007, after carefully considering the offer of reinstatement, Ms. Calef rejected the same, based upon the reception she received from the Senior Manager of the facility. However, during the course of her visit to the Ground facility, it appeared to Ms. Calef that both the outgoing P&D Service Manager, whom she was slated to replace, and the Dock Service Manager were hired between the time that she was barred from the workplace by Steve Hickman and the September 20, 2007 reinstatement offer from Mr. Hickman. Moreover, it appeared that the Senior Manger at the terminal was hired in the recent past and that he had less Ground terminal experience than Ms. Calef, at the time he was hired. Furthermore, it appeared that the outgoing P&D Service manager was to be placed in an engineering position with FedEx Corporation, a position for which Ms. Calef would have been qualified.

7. If the information Ms. Calef gleaned regarding prior job openings within the Ground facility and FedEx Corporation is correct, then there is reason to question whether the timing of the

offer of reinstatement in relation to the entry of the Court's August 31, 2007 Order is indicative of an offer made in the absence of good faith and, therefore, properly rejected.

. . . .

8. It is anticipated that the Defendant will defend this case, at least in part, by claimant a good faith unconditional offer of reinstatement to Ms. Calef.

9. Given the likelihood of such a defense, Ms. Calef should be afforded an opportunity to determine the true facts surrounding prior job openings at the Clarksburg Ground terminal

. . . .

Plaintiff attached to her Motion her proposed Discovery Requests, which included, among others, requests for the personnel files of Matt Runyan; the individual who replaced Matt Runyon; Paul Bernard; Aaron Auvil; each individual who was hired as a Service Manager at the Clarksburg/Bridgeport, West Virginia Ground terminal between February 24, 2004 and September 20, 2007; each individual who was hired as a Senior Manager at the Clarksburg/Bridgeport, West Virginia Ground Terminal between February 24, 2004 and September 20, 2007; and "a list of each and every position opening (whether part-time or full-time) at the Clarksburg/Bridgeport, West Virginia FedEx Ground facility filled between February 24, 2004 and September 20, 2007." Plaintiff's stated reason for needing each personnel file was "so that Plaintiff might determine his qualifications and the date on which he [was hired into his position] at the FedEx Ground terminal . . . ."

Defendant opposes Plaintiff's Motion, arguing, in part, that the rule of law regarding such offers as it made to Plaintiff requires that the offer be "unconditional." There is no element of "good faith" to be proven. Defendant argues "The plaintiff . . . need not conduct discovery, therefore, to ascertain the intent of the defendant in offering her reinstatement because it is not

3

germane." Further, "[t]he Plaintiff should not . . .be permitted to conduct a fishing expedition to try to come up with more reasons for her 'reasonable rejection' of the unconditional offer."

Plaintiff in her Reply argues that "good faith" is indeed at issue, especially where, as here, the offer of reinstatement came long after litigation was instigated, and after the Court's rulings on the damages issues of mitigation and offset. Plaintiff further argues:

> The express terms of plaintiff's rejection of the offer . . . makes clear that the offer was rejected, in part, because the presence of earlier opening supports her conclusion that the offer was one made in bad faith . . . . Moreover, the particularity of the majority of her proposed discovery requests reveals that she was informed of the actual openings within the facility before moving this Court to reopen discovery in connection with the Defendant's September 20, 2007 offer . . . . Ms. Calef came to learn of specific openings within the facility. Accordingly, the knowledge of prior job openings necessarily informed her decision to reject the Defendant's offer. . . . . Moreover, during the course of her visit to the terminal, Ms. Calef came to learn that there was a part-time service manager who was slated to replace Mr. Runyan before the Defendant so belatedly offered reinstatement to Runyan's job. Naturally, Ms. Calef was concerned that this individual who would necessarily be bumped so that she might be offered the job would bitterly resent her return to Defendant's employee. Such anticipated animosity establishes a legitimate basis for a reasonable rejection of a reinstatement offer.

Plaintiff attached to her Reply the letter she sent, through counsel, to Defendant rejecting the reinstatement offer. That letter, besides the brief allegation that the offer was not made in "good faith," advises that Plaintiff's employment relationship with FedEx had been "irreparably harmed," due, in part to "Defendant's previously undisclosed efforts . . . to denigrate her, both personally and professionally." "As a result, Ms. Calef is rightfully concerned that were she to return to employment with the Defendant it would simply institute yet a third round of personal and professional attacks so as to bring about her termination." The letter further states:

> Moreover, I wish to advise that I am concerned that my client's emotional response upon entry into the FedEx Ground Terminal will be such as to render her acceptance of reinstatement impossible. Initially, upon learning of the offer, Ms. Calef could not help but recall Mr. Hickman's claims that each and every Ground Driver calling the Clarksburg Home Delivery Terminal would hang up the phone rather than speak

4

with her. Given such pronouncements, it is not surprising that Ms. Calef felt nervous entering the terminal as she did not know whether Mr. Hickman's fallacious accounts of her performance, personality, attitude and integrity had so infected the workplace as to guarantee that the Ground Drivers and personnel at the facility would necessarily greet her with disrespect and disdain. These fears were reinforced when she was advised by Mr. Bernard in a phone conversation, that he knew who she was, he knew her past with the company, and he knew that Steve Hickman had offered her the Service Manager position at the Ground facility. Mr. Bernard's declarations made it clear to Ms. Calef, even before she arrived at the terminal, that she was being forced upon Mr. Bernard . . . .

Finally, it is apparent that the scurrilous accusations made by the Defendant against Ms. Calef both prior to and during the course of this litigation render this case one in which reinstatement is clearly not an appropriate remedy. In other words, the Defendant's decision to defend this case by way of maligning Ms. Calef's competence and integrity has so seriously undermined the employee/employer relationship as to render reinstatement an impossibility.

Finally, at the hearing, Plaintiff argued that she indeed did not believe the offer of reinstatement was even "unconditional[1]."

Upon consideration of all which, in addition to the other reasons as stated at the hearing, the Court finds:

1) An offer of reinstatement was made to Plaintiff by Defendant on September 20, 2007;

2) Plaintiff does not consider the offer unconditional;

3) Plaintiff rejected the offer;

4) Plaintiff's letter rejecting the offer articulated her reasons for doing so. In general, those reasons were not that others had been hired in her stead, but that the employer/employee relationship had been irretrievably broken by Defendant's denigration of her;

---

[1] At the hearing counsel for Calef stated that Calef did not consider the offer to be unconditional because it did not contain language: 1) that Calef would not be retaliated against if she return; 2) outlining the specific pay provisions (rate of pay, benefits, etc.) of the reinstatement position; and 3) that Calef could continue with he present lawsuit. All these matters arise from Defendant's letter offer of reinstatement dated September 20, 2007 and Calef needed no additional discovery with respect to her claim that the offer was not unconditional.

5

5) Plaintiff's letter of rejection stated that her "emotional response upon entry into the FedEx Ground Terminal will be such as to render her acceptance of reinstatement impossible," and "to render reinstatement an impossibility;"

6) Plaintiff's rejection letter was composed and sent after reasoned discussions with counsel[2];

7) Plaintiff's articulated reasons for rejecting the offer came from Plaintiff's knowledge already in her possession;

8) The Court is not convinced that there is a "good faith" standard once Defendant has made an "unconditional" offer; and

9) Even if a "good faith" unconditional offer is required, the Court does not find it necessary at this late date[3] to permit reopening for discovery delving into the personnel records of other FedEx employees. Plaintiff rejected the offer. She rejected it based on reasons stated with great particularity and based on information she already had within her own knowledge. While the fact that other employees may have been hired while Plaintiff was not offered reinstatement is relevant to her underlying claim[4], she clearly stated reinstatement was impossible. This would apparently be

---

[2]According to Plaintiff's counsel, Plaintiff visited the Fed Ex Ground facility on September 21, 2007; drafts of two letters were prepared, one of which declined the offer of reinstatement; the draft letter declining the offer of reinstatement was discussed and edited on September 21, 2007 as a result of telephone consultations between counsel and Calef; Calef considered and further discussed the decision with alternate counsel during the time period from September 21, 2007 and September 26, 2007; and authorized the rejection letter to be transmitted to Defendant on September 26, 2007. Approximately one month passed between the rejection of the offer of reinstatement and the filing of the subject motion for additional discovery. Counsel for Calef explains the delay on her vacation out of the country but does not explain why alternate counsel who consulted with Calef did not act or even make contact with defense counsel relative to the additional discovery.

[3]Trial of this case is set for January 2008.

[4]To the extent the fact that other employees may have been hired while Plaintiff was not offered reinstatement is relevant to Calef's underlying claim, that was discoverable and should have been discovered during the open discovery period that has now been long closed.

6

so whether or not other employees were hired in her stead.

10) Plaintiff did not meet and confer with counsel for Defendant prior to filing the within motion or at any time thereafter and prior to the hearing of November 14, 2007 as required by LRCivP 26.04 (b) and 26.01 (d).

11) Review of the discovery requests discloses that the same seek information from personnel files: that may be subject to claims of privilege by persons (employees) who are not parties to the pending litigation; may be relevant to the underlying claims but are not reasonably related to the bona fides of Defendant's offer of reinstatement; and are overly broad with respect to their stated purpose.

For all the above reasons, Plaintiff's "Motion for Leave to Reopen Discovery for the Sole Purpose of Determining Whether the Defendant's September 20, 2007, Offer of Reinstatement was Made in Good Faith" [Docket Entry 182] is **DENIED**.

It is so **ORDERED**.

The United States Court Clerk for the Northern District of West Virginia shall provide a copy of this Order to counsel of record.

DATED: November 15, 2007.

*John S. Kaull*
**JOHN S. KAULL**
**UNITED STATES MAGISTRATE JUDGE**