## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TAMMY L. CALEF,**
      **Plaintiff,**

**V.**                                  **CIVIL ACTION NO: 1:06-CV-47**

**FEDEX GROUND PACKAGE SYSTEM, INC.,**
      **Defendant.**

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
### <u>IN THE ALTERNATIVE, FOR A NEW TRIAL</u>

#### I. COMBINED STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, Tammy L. Calef, commenced the instant cause of action against the Defendant FedEx, on February 17, 2006, when she filed her Complaint in the Harrison County, West Virginia, Circuit Court. The Defendant FedEx, thereafter, removed Ms. Calef's Complaint through invocation of this Court's diversity jurisdiction.

Ms. Calef's Complaint is grounded solely within the West Virginia Human Rights Act (HRA) and is premised upon the Defendant's refusal to permit Ms. Calef to continue in her position as a Package and Delivery Service Manager III, after she sustained an injury which limited her to lifting no more than 20 pounds. More particularly, the Defendant, on February 24, 2004, through its Regional Human Resource Director, Steve Hickman, instructed Ms. Calef to leave the terminal, sign up for FMLA and STD, not return to the terminal until she received additional instructions from her immediate supervisor or Mr. Hickman, and "that the company [would] assess [Ms. Calef's] ability to do her job based on the restrictions imposed by her doctors." Plaintiff's Trial Ex. 10.

Ms. Calef immediately asked why she was being sent home as she was performing all of

her job duties as outlined in a "Performance Expectation Plan," despite her limitation.[1] *See* Plaintiff's Trail Ex. 42. Thereafter, the Defendant FedEx would not permit Ms. Calef to return to her prior position, or any other FedEx Company position, without first presenting a "full release" for her "original medical restrictions." Plaintiff's Ex. 17 & 54.  Based upon these facts and others, Ms. Calef asserted, at trial, that the Defendant FedEx, in direct violation of the HRA, discriminated against her on the basis of disability because it "regarded her" as disabled.

Although the Defendant FedEx maintained, throughout the course of the subject litigation and at trial (and presumptively still does so), that Ms. Calef remains its non-working, unpaid, employee, Ms. Calef ardently sought other jobs both within and without FedEx for more than two years. *See* Plaintiff's Demonstrative Trial Ex. 55.   It was only after this prolonged, fruitless search for employment financially comparable to that of her position with the Defendant FedEx that Ms. Calef sought to increase the likelihood of successful employment through enrollment in the West Virginia University College of Law, in August 2006.  Ms. Calef's decision to enroll in law school, according to Clifford Hawley, Ph.D., expert economist, significantly reduced the damages for which FedEx would otherwise have been liable.

Ms. Calef's claim of disability discrimination,[2] against the Defendant FedEx, was tried to an eight-person jury from January 2 to January 7, 2008.  After being properly instructed by the Court on the law applicable to the case, and after its deliberation, the jury returned a verdict in Ms. Calef's favor.

---

[1]Not to be confused with a "Performance Improvement Plan."

[2]By Order entered July 26, 2007, the Court dismissed Ms. Calef's alternative claim of sex discrimination for the adverse employment action taken against her.  *See* Document 173.

The jury's findings of fact, as to liability, on Ms. Calef's claim of disability discrimination, reached during the deliberative process, were reported in responses to "Special Interrogatories."  Document 234. These Special Interrogatory responses establish that Ms. Calef proved by a preponderance of the evidence: (1) "that the Defendant [FedEx] regarded the plaintiff, Tammy L. Calef, as disabled on February 24, 2004"; (2) "that the plaintiff Tammy L. Calef, on February 24, 2004, was able and competent to perform the essential functions of the job of 'Pick up and Delivery ('P and D') Service Manager, Level III'"; and, (3) "that the Defendant [FedEx] took an adverse employment action against the plaintiff, Ms. Calef."  In addition, the jury found: (1) "that the Defendant [FedEx] [DID NOT] articulate a legitimate non-discriminatory reason for taking its adverse employment action against the plaintiff, Tammy L. Calef"; and, (2) that, by a preponderance of the evidence, "the defendant [FedEx's] offer of employment to the plaintiff, Tammy L. Calef, on September 20, 2007, was [NOT] unconditional."

In conformity with the foregoing liability findings against FedEx, the jury awarded damages to Ms. Calef.  In particular, the jury awarded Ms. Calef: (1) "Back Pay" in the amount of $274, 557.00; (2) "Front Pay" in the amount of $263, 771.00; and, (2) damages for "Emotional distress, humiliation and embarrassment" in the amount of $270,000.00. Document 234.  On January 17, 2008, Ms. Calef moved to amend the Jury Verdict Judgment by adding $106,285.86 in prejudgment interest, pursuant to West Virginia Code Section 56-6-31.

On January 22, 2008, the Defendant FedEx renewed its motion for judgment as a matter of law, pursuant to Federal Rules of Civil Procedure, Rule 50(b) or in the alternative for a new trial, under Federal Rules of Civil Procedure, Rule 59(e).  Ms. Calef now timely submits her

memorandum in opposition to that motion.

## II. ARGUMENT

### A. Standard of Analysis

#### 1. Rule 50(b) Renewed Motion for Judgment as a Matter of Law

In assessing the Defendant's renewed Federal Rules of Civil Procedure, Rule 50(b) motion for judgment as a matter of law, this Court must view the evidence in the light most favorable to Ms. Calef, the non-moving party, and draw all reasonable inferences from the evidence in her favor, without weighing the evidence or assessing the credibility of witnesses. *See* Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 645 (4th Cir 2002). "The question is whether a jury, viewing the evidence in the light most favorable to [Ms.Calef], could have properly reached the conclusion reached by this jury." Dennis, Id. Judgment as a matter of law is only proper, "if there can be but one reasonable conclusion as to the verdict." Dennis. Id.

#### 2. Rule 59(e) Motion for New Trial.

This Court may grant the Defendant's motion for a new trial; (1) ONLY IF the verdict is against the clear weight of the evidence; (2) ONLY IF the verdict is based on evidence which is false; or, (3) ONLY IF the verdict will result in a miscarriage of justice. Dennis, 390 Fd.3d at 650.

### B. Introduction

The *hamartia* of the Defendant FedEx's position not only as expressed in the bulk of its post trial motions, but coursing throughout the case *subjudice*, since its inception, is its recalcitrant declination to accept that this diversity action is governed by the West Virginia Human Rights Act (HRA), its implementing regulations and relevant West Virginia precedent

4

interpreting the same,  **not** federal case authority interpreting the Americans with Disabilities Act (ADA).  FedEx's tragic flaw is, perhaps, best illustrated by the following statement concerning "temporary impairments" and "regarded as disabled"persons, found within its memorandum supporting its post-trial motions: "This is in keeping with federal interpretation of the same phrase under the Americans with Disabilities Act." Document 241, 3.  The issue of whether a temporary disability is covered by the HRA was firmly settled, under West Virginia Law,  in the affirmative, **in 1999**.  *See* Syl. pt. 3, Haynes v. Rhone Polenc, 521 S.E.2d 331 (W.Va. 1991) (A "qualified person" protected by the HRA includes a person who is temporarily unable to perform the requirements of the person's job); *see also* Stone v. St. Joseph's Hospital, 538 S.E.2d 389, 404, n. 21, *citing* Haynes, (acknowledging West Virginia's strong and frequent divergence from federal precedent).

Simply put, the disability discrimination jurisprudence of the state of West Virginia more often than not parts way with, and at very divergent angles to, federal circuit cases interpreting the ADA.  As explained by the Stone Court:

> [W]e recognize that the West Virginia Human Rights Act, as created by our Legislature and as applied by our courts and administrative agencies, represents **an independent approach to the law of disability discrimination** that is not mechanically tied to federal disability discrimination jurisprudence.

(Emphasis added) Stone, 538 S.E.2d at 404.  Accordingly, the Defendant FedEx's *ersatz* apotheosis, notwithstanding, the post trial motions at issue, ought not be examined with an eye toward subsuming the language and phrases of the HRA or its implementing regulations to an orientation "in keeping with federal interpretation."

**C. Contrary to the Defendant's Averment, an Individual with a Temporary Disability is Protected Under the HRA.**

As discussed, *supra*, the HRA protects an individual who is unable *temporarily* to perform her job because of a disability. Syl. pt. 3, <u>Haynes</u>, 521 S.E.2d 331; *see also* <u>Stone</u>, 538 S.E.2d at 404, n. 21.  Accordingly, in its memorandum, the Defendant FedEx erroneously premises its assertion that Ms. Calef did not prove that she was a person with a disability as defined by the HRA and its implementing regulations because she "was not regarded as having a permanent or long-term disability." Document 241, 2.  Instead, avers FedEx, it simply "believed" that Ms. Calef had a temporary disability that prevented her from performing her work.  See Document 241, 3-5.

Defendant FedEx then necessarily concedes that it perceived Ms. Calef's purported "temporary disability" as preventing her from performing the essential functions of her job as a Service Manager III.   In other words, Defendant admits that it "regarded" Ms. Calef as disabled in violation of the HRA. Clearly, given its admission in its post trial motions that it regarded Ms. Calef as temporarily disabled, there is a legally sufficient evidentiary basis for a reasonable jury to find for Ms. Calef on the issue of whether the Defendant FedEx "regarded" her as disabled within the meaning of the HRA.  Therefore, this Court should deny the Defendant FedEx's Renewed Motion for Judgment as a Matter of Law.

**D. Contrary to the Defendant FedEx's Protestations, it Regarded Ms. Calef as Disabled, within the Meaning of the HRA.**

Under the HRA, the question of whether a person was "discriminatorily treated as having a substantially limiting impairment . . . is an objective test that does not focus on the subjective motivation behind the behavior in question, but on the behavior itself." <u>Stone</u>, 538 SE2d at 407,

6

n. 25. Applying this objective standard to the evidence and viewing that evidence in the light most favorable to Ms. Calef, as well as, drawing all reasonable inferences therefrom in her favor, it is apparent that any jury could have properly reached the same conclusion reached by this jury, that the Defendant FedEx regarded Ms. Calef as disabled. *See* Dennis, 290 F.3d at 645 (4th Cir 2002).

In its memorandum, Defendant FedEx avers that it could not have mistakenly regarded Ms. Calef as disabled "as it was the plaintiff who [purportedly] informed the defendant" of the following: "that she could not drive, could not lift over 20 pounds, could not touch a package, could not type, could not use her left arm and could not write, except with her right hand." Document 241, 6. Defendant does not cite to the record for any of these claims. Initially, these statements as set forth by Defendant in its memorandum are misleading.

Neither Ms. Calef nor her physicians stated that she could not drive. Rather, Ms. Calef's driving was to be limited so that her condition might improve. Plaintiff Trial Ex. 58 (2/16/04 Pinti letter). In addition, on February 16, 2004, Ms. Calef was limited to lifting no greater that 20 pounds. Plaintiff Trial Ex. 58 (2/16/04 Nelson note). Eventually Ms. Calef was instructed not to use her left arm. Plaintiff Trial Ex. 58 (2/20/04 Hall note). As Ms. Calef was ambidextrous, she was able to complete all requisite tasks, albeit somewhat more slowly, but, nonetheless, timely.

Accordingly, as of February 24, 2004,[3] the date on which Ms. Calef was barred from the terminal by Steve Hickman, instructed to sign up for FMLA and STD, told not return to the

---

[3]It should be noted that the Defendant FedEx specifically requested that the Court in its charge restrict the jury's inquiry as to whether Defendant "regarded" Ms. Calef as disabled to February 24, 2004. *See* Document 216, 5 (the plaintiff must prove that as of February 24, the defendant treated the plaintiff as if she had an impairment which interfered with her general ability to work).

terminal until she received additional instructions from her immediate supervisor or Mr.

Hickman, and "*that the company [would] assess her ability to do her job based on the*

*restrictions imposed by her doctors*," Ms. Calef was to limit her driving, not lift greater than 20

pounds, and not use her left arm.  Plaintiff's Trial Ex. 10 & 58 *supra*.

Furthermore, the undisputed evidence of record is that between February 16 and February

24, 2004, neither Ms. Calef nor her physicians advised FedEx that she was unable to perform her

job functions.  Moreover, it is undisputed that between February 16 and February 24, 2004, that

Ms. Calef not only was able and competent to perform, but in fact performed her job duties as set

forth with particularity on the "Performance Expectation Plan," and in accordance with the

Service Manager III job description.  *See* Plaintiff Trial Ex. 42 & 40.

Furthermore, as explained by Dr. Bowers, and contrary to the averments of Defendant,

the undisputed evidence of record is that Ms. Calef's limitation of lifting no more than 20 pounds

is simply a "light duty note." Bowers Trial Depo.,14, line 1.  And that this "light duty" limitation

has remained constant from February 16, 2004, to date.  Bowers Trial Depo., 19, line 13-14; 20,

line 21; 21, line 4-5; 29, line 1-5 & line 15-29; 68, line 14-15, *See also* Defendant's Trial Ex. 23,

bates 86.  The job description for Ms. Calef's position as a Service Manager III did not require

her to lift any weight.  *See* Plaintiff's Trial Ex. 40.  Accordingly, based upon the foregoing

evidence, any reasonable jury could properly reach the same conclusion reached by this jury, that

the Defendant FedEx regarded Ms. Calef as disabled, in violation of the HRA.

As for the Defendant's arguments made pursuant to Stone, they are simply misplaced.

The holding in Syllabus Point 3 of Stone does not only address persons who have no

impairments, such as Mr. Stone, but persons, such as Ms. Calef,  with limitations that do not

8

limit a major life activity, as well.

> Under our Human Rights Act, *W.Va.Code,* 5-11-1 *et seq.,* a "person with a disability" within the meaning of the law means a person who has one or more physical or mental impairments that substantially limits one or more major life activities; *a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation*; a person who has one or more physical or mental impairments that substantially limits major life activities only as a result of the attitudes of others toward such impairment; and *a person who has no such impairments, but who is treated by others as having such impairments.*

(Emphasis added) Syl. pt. 3, Stone, 538 S.E.2d at 392. Accordingly, the so called "paramount distinguishing factor" identified by the Defendant as between Stone and the case *subjudice*, is of no moment. Document 241, 6.

Mr. Stone had no limitation, whatsoever. Therefore, he pursued his cause of action as "a person who has no such impairments, but who is treated by others as having such impairments." Stone, Id. Ms. Calef, on the other hand, had a limitation. But that limitation did not limit her ability to perform the essential functions of her job. Accordingly, Ms. Calef raised her "regarded as" claim against the Defendant, FedEx as "a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation." Stone, Id.

There is no question, particularly in light of Defendant's arguments in its post trial motions, that the Defendant "regarded" Ms. Calef, at least temporarily, as disabled. Therefore, any reasonable jury could properly reach the same conclusion reached by this jury, that the Defendant FedEx regarded Ms. Calef as disabled, in violation of the HRA.

Defendant, also, argues that as Ms. Calef applied for Social Security Disability benefits (SSDI), on May 4, 2004, "plaintiff regarded plaintiff as being disabled, and obviously misled

defendant to agree." Document 241, 8.  Initially, Defendant concluded that Ms. Calef's

limitations rendered her disabled on February 24, 2004, more than two months before any

application for SSDI benefits was made.  As a consequence, this application could not possibly

have informed the Defendant's decision.  In addition, there is absolutely no evidence of record to

indicate that either the Defendant or its agent, GatesMcDonald was aware, in May 2004, that Ms.

Calef made this application for SSDI benefits.  Finally, it is apparent that neither the Defendant

nor any of its agents had any knowledge of the May 4, 2004 application for SSDI until it received

the same in discovery, nearly two years after said application was made.   As a consequence, Ms.

Calef could not possibly have misled the Defendant in connection with the adverse employment

action, at issue.  Accordingly, Defendant's protestations, notwithstanding, it is beyond dispute

that a reasonable jury could properly have found that the Defendant, "regarded" Ms. Calef as

disabled, in violation of the HRA.  Therefore, this Court should deny the Defendant's renewed

motion for judgment as a matter of law.

**E. Any Jury Could and Would Reasonably Find that Ms. Calef Was Able and Competent to Perform the Job, at Issue.**

The West Virginia Human Rights Commission (HRC) Regulations define "Able and

Competent" as follows:

> "Able and Competent" means that, with or without reasonable accommodation, an
> individual is currently capable of performing the work and can do the work
> without posing a direct threat (as defined in Section 4.8) of injury to the health
> and safety of either other employees or the public.

77 CSR 1-4.3.[4]  As noted, *supra*, contrary to Defendant's averments, it is undisputed that even

---

[4]It should be noted that Defendant, in apparent reliance upon <u>Hosaflook v. Consolidation Coal Co.</u>, 497 S.E.2d 174, 180 (W.Va. 1979) erroneously relies upon the 1991 version of this provision of the regulations.  Accordingly, there is no longer any reference to "serious threat of

with her injuries, Ms. Calef not only was able and competent to perform, but in fact performed, her job duties as set forth with particularity on the "Performance Expectation Plan," and in accordance with the Service Manager III job description. *See* Plaintiff Trial Ex. 42 & 40.

As for the Defendant's repeated claims that the allegations contained in Ms. Calef's complaint are judicial admissions which may not be contradicted by Ms. Calef, this claim is incorrect for three reasons. First, the error as to the lifting requirements of the job included within Ms. Calef's complaint came about as a direct result of the Defendant forwarding misinformation related to the exertional requirements of the job to her doctor, through its agent GatesMcDonald. Plaintiff's Trial Ex.58 (6/3/04 fax w/ job description from GatesMcDonald to Dr. Hall). This misinformation came in the form of a Service Manager II job description which was sent to GatesMcDonald by Beverly Gray. Plaintiff's Trial Ex.31. Ms. Gray admitted at trial that as Ms. Calef was a Service Manager III, her substitution of the Service Manger II job description for the Service Manager III job description was contrary to her usual practice. In addition, Ms. Gray explained that GatesMcDonald used job descriptions in order to make determinations for which FedEx was solely responsible as to whether an employee could perform her job duties. Dr. Bowers explained that it was this misleading Service Manager II job description which caused completion of FedEx STD physician statements in which it was indicated that Ms. Calef was disabled from her FedEx work. *See* Bowers Trial Depo., 26-28.

Mr. Hickman admitted on direct examination, in conformance with the Defendant's discovery responses, that the Service Manager III job description applied to Ms. Calef. *See* Document 150, Attachment 1. Moreover, in response to Plaintiff's Second Request for

injury to the health or safety of the individual."

11

Admissions, Defendant specifically denied that the job description for the Service Manager position which Tammy Calef held in 2004 required occasional lifting in the manner set forth in the Service Manager II job description, at issue.  *See* Document 150, Attachment 4.  Accordingly, Defendant ought not profit from its dissimulation of misleading information.

Second, "a factual admission in a pleading accompanied by an explanation qualifying or limiting its effect is not to be treated as an unqualified admission."  Franklin D. Cleckley, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS, (4th ed) §8-2(E)(3)(b)(I), 8-49, *citing* Harper v. Clear Fork Coal & Land Co., 92 S.E. 565 (W.Va. 1917).  In the instant case, Ms. Calef's complaint set forth the following:

> Ms Calef's physician restricted her to lifting no more than 20 pounds, rather than the 25 pounds established in the functional capacity requirements of the Package and Delivery Service Manager position.  ***With this minimal weight restriction Ms. Calef would have been able to perform all of the essential functions for the position of Package and Delivery Service Manager***.

(Emphasis added) Document 2-2, pg. 3 ¶12.  Accordingly, Ms. Calef qualified the 25 pound functional capacity reference with the unequivocal declaration that with the minimal weight restriction of 20 pounds she was able to perform all of the essential functions of her job. As a consequence, Defendant may not properly treat the 25 pound reference as an unqualified judicial admission and Defendant **CANNOT** properly or truthfully proclaim, as it does in its memorandum, that "plaintiff admitted that she could not do the 'functional requirements' of her job, which means she could not do her job" as the undisputed evidence of record is quite to the contrary. Document 241, 9.

Moreover, defense counsel quite specifically and forcefully questioned Ms. Calef regarding the 25 pound functional requirement referenced in her Complaint.  Ms. Calef admitted

12

to the language of the Complaint.  On re-direct, Ms. Calef explained to the jury that this 25

pound requirement was included within the Complaint because of the misinformation provided

by the Defendant in relation to her job description.

Finally, Defendant reargues to this Court the facts in dispute concerning the identification

of the essential functions of Ms. Calef's job in the same manner as it argued the same facts to the

jury.  In this regard, the jury was instructed that:

> (I) "Essential Functions of Job."  A job function may be considered essential for
> several reasons, including but not limited to, the following: (1) the reason the
> employment position exists is to perform that function; or (2) a limited number of
> employees are available to perform that function; or (3) the amount of time spent
> on the job performing the function.  A written job description may be considered
> evidence of the essential functions of the job.

Document 233, 10-11.  Having been properly instructed the jury necessarily weighed the facts in

dispute regarding the identification of the essential functions of Ms. Calef's job and found that

Ms. Calef could perform those functions without accommodation.  See Document 234, 1-2,

Interrogatory 2.

Nonetheless, Ms. Calef will address these factual dispute arguments in *seriatim*.  First,

Defendant mischaracterizes, as it always has, the queries posed by the SSDI questionnaires

concerning Ms. Calef's work. Document 241, 10.  These questionnaires inquired, not what are

the essential functions of your job or even what are your job duties, but rather, "what did you do

all day?"  *See* Defendant's trial Ex. 12 & 15.  In response to these queries, Ms. Calef simply

included all of the onerous tasks she was instructed to perform even though not included within

her "Performance Expectation Plan" or job description.  Among those onerous tasks was

delivering packages.  Based upon these descriptions, as explained by Ms. Calef, the Social

Security Administration erroneously concluded that she was a delivery driver.

13

Carolyn Lyle, who was responsible for assessing employee limitations, as well as, the essential functions of FedEx employee positions in the context of requests for reasonable accommodation, explained to the jury that driving and delivering packages were not among the purposes of the Service Manager III job.  Furthermore, neither the "Performance Expectation Plan," nor the Service Manager III, job description included any job related function which would require Ms. Calef to lift greater than 20 pounds.  Moreover, when Chris Davis was asked about his job duties at trial, driving and delivering packages were not included.

In addition, every witness queried admitted that FedEx employed no delivery drivers. And, that such drivers were either independent contractors or drivers employed by ADECO a temp agency.  Accordingly, any reasonable jury could properly conclude that lifting over 20 pounds was not an essential function of Ms. Calef's Service Manager III job.

Defendant also argues, again, that there were not enough people to deliver packages.  Ms. Calef's trial testimony quite firmly and clearly refuted this claim.  Ms. Calef's testimony alone is sufficient to convince a reasonable jury that there were, indeed, sufficient people to deliver packages in January and February 2004.

Finally, Defendant attempts to disavow the Service Manager III job description which does not contain any lifting requirement.  Defendant's difficulty in asserting this argument lies in the fact that it specifically advised, in response to interrogatories, verified, signed and sworn to, by Steve Hickman, that the Service Manager III job description applied to Ms. Calef.  Document 150, Attachment 1.  Mr. Hickman, as the signatory to the verification, was forced to acknowledge this interrogatory answer on direct examination.

The forgoing demonstrates that, a reasonable jury could properly have found that Ms.

Calef was able and competent to perform the essential functions of her Service Manager III job, as the credible evidence of record indicates that lifting greater than 20 pounds was not an essential function of that job.  Therefore, the Court should deny the Defendant's renewed motion for judgment as a matter of law.

**F. Plaintiff is Not Judicially Estopped from Contending She is Able and Competent to Perform Her Job and that the Defendant Unlawfully Regarded Her as Disabled.**

In purported reliance upon Cleveland Policy Management Systems, Corp., 526 US 795 (1999), Fox v. General Motors Corp., 247 F.3d 169 (4th Cir 2001) and Stowe-Pharr Mills, Inc., 216 F.3d 373 (4th Cir. 2000) the Defendant FedEx avers that Ms. Calef is judicially estopped from contending both that she was able and competent to perform her job and that the defendant unlawfully regarded her as disabled.  The cases upon which Defendant relies, however, in no way support application of judicial estoppel to Ms. Calef's cause of action.

Initially, Ms. Calef applied for but was not awarded Social Security Disability (SSDI) benefits.  The United States Supreme Court spoke directly to this situation in Cleveland:

> Finally, *if an individual has merely applied for, but has not been awarded*, SSDI benefits, *any inconsistency* in the theory of the claims *is of the sort normally tolerated by our legal system*.   Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."

(Emphasis added) Cleveland, 526 U.S. at 805, *citing* Fed. Rule Civ. Proc. 8(e)(2).  Accordingly, the mere fact that Ms. Calef applied for SSDI provides no support to the Defendant's arguments. Moreover, Ms. Calef explained that she initially applied for SSDI because a friend who works for the Social Security Administration recommended that she do so after the Defendant FedEx decided that she was disabled and unable to perform her job.  This recommendation was made

because the SSDI process takes considerable time.  In addition, Ms. Calef testified that she appealed SSDI denials and made re-application for benefits only because the Defendant's LTD Plan required her to do so.

Second, in not one single section of the SSDI applications and questionnaires completed did Ms. Calef aver that she was unable to perform the essential functions of her Service Manager III job. *See* Defendant's Trial Ex. 6,11,12,15,16,17,18,& 19.  Moreover, the questionnaires are replete with examples of activities which give rise to the inference that Ms. Calef was able to perform all of the essential functions of her job.  For example, in her May 12, 2004 "Activities of Daily Living" questionnaire, Ms. Calef reported that she does laundry, vacuums, pays bills, washes dishes, does grocery shopping "every two weeks or as necessary," and shoots pool "on again off again" despite the fact that she can only perform "one armed duties" and has "pain in her left hand and right arm." Defendant's Trial Ex. 6.  Similarly, in her September 23, 2004 questionnaire, Ms. Calef reports that she is able to sew with a machine and rolling scissors, irons and vacuums, grocery shops and wears a brace when she "overuses her arm or if there is pain, which is most of the time."  Defendant's Trial Ex. 12.  On April 20, 2005, Ms. Calef reported the same or very similar activities: ironing, vacuuming, grocery shopping, monthly pool games, and utilization of a brace for any activity. Defendant's Trial Ex. 15.  In addition, each one of the questionnaires introduced as an exhibit at trial by Defendant was handwritten by Ms. Calef. Therefore, contrary to Defendant's arguments, the fact that she could only perform "one armed duties" did not in any way prevent Ms. Calef from writing.

However, perhaps the most telling evidence on the issue of whether the Defendant's argument as to judicial estoppel is supported by the "purely factual" statements made by Ms.

16

Calef in various SSDI disability questionnaires are those statements found within her June 1, 2005 "Disability Report Appeal." In this report, Ms. Calef advised the Social Security Administration that there has been no change in her injuries or her limitations and that the reason for her last doctor visit, on May 31, 2005, was to obtain a release to do "light office work." Defendant's Trial Ex.19.

Furthermore, there is nothing of record concerning Ms. Calef's application for FedEx Plan benefits that might lend support to Defendant's assertion that Ms. Calef should be judicially estopped from pursuing her cause of action against it.  Initially, it is beyond dispute hat Ms. Calef did not decide that she should apply for FedEx disability plan benefits, on February 24, 2004. Rather, on February 24, 2004, the Defendant FedEx ordered Ms. Calef to apply for such benefits. *See* Plaintiff's Trial Ex. 10.

Furthermore, contrary to Defendant's averments, there are no "purely factual" statements in the two applications for LTD benefits of record, that conflict with Ms. Calef's cause of action against it.  In her "Employee Statement" of July 22, 2004, Ms. Calef reported that her symptoms were "pain in hand" and that these symptoms were first noticed when "carrying packages and turning steering wheel."  Ms. Calef also reported that because of her left hand injury, she overused her right arm.  In addition, she explained that "HR called & sent me home – **Worked 3½ Hours**." Moreover, FedEx is the only party to write the word "disabled" in response to a query on this application.  Beverly Gray handwrote this response on the first page of the "Employer's Statement." Defendant's Trial Ex. 9.  Similarly, in her August 2005 "Claimant's Questionnaire" Ms. Calef reported that she experienced "pain pushing and pulling anything of substantial weight" and "Currently, I am spending most of my time looking for employment." Defendant's Trial Ex. 20.  In addition, Ms. Calef informed the FedEx Plan claims processor that

she continued to manage volley ball classes and would begin writing sports articles about high school volley ball games for the local newspaper. Defendant's Trial Ex. 20.  These statements reveal that Ms. Calef was truthful when completing the various questionnaires, at issue, truthful in her deposition and truthful in her trial testimony.

Under the circumstances of the instant case, especially in light of Defense counsel's vigorous cross examination of Ms. Calef with the very exhibits discussed, *supra*, it is apparent from Ms. Calef's explanations as to the reasons for the applications, as well as the nature of the "purely factual" statements made therein that there was more than sufficient evidentiary basis to "warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with *or without* 'reasonable accommodation.'" (Emphasis in original) EEOC v Stowe Pharr Mills, 216 F.3d 373, 378 (4th Cir 2000) *quoting* Cleveland, 526 US at 807; *see also* Fox v General Motors, Corp., 247 F.3d 169,178 (4th Cir. 2001).  Therefore, this Court should deny the Defendant's renewed motion for judgment as a matter of law.

**G. Ordering Ms. Calef to Apply for FMLA and STD Was NOT a Reasonable Accommodation and Was NOT Done for a Legitimate Non-Discriminatory Reason**

In its memorandum Defendant makes much of the fact that the jury, in response to Interrogatory No. 6 of the "Special Interrogatories" submitted to it by the Court, concluded that the reason it articulated for ordering Ms. Calef to leave the terminal was not "a legitimate non-discriminatory reason." Document 234, 3.  Defendant's protestations are misplaced.  It is not enough to articulate any reason for the adverse employment action taken, the Defendant has the burden of producing a "legitimate nondiscriminatory reason."

Under the burden-shifting *McDonnell Douglas-Burdine* framework for analyzing pretext claims, a plaintiff must first create an inference of discrimination by

18

establishing a *prima facie* case. [Citations omitted]  The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action.  *See St. Mary's Honor Center,* 509 U.S. at ----, 113 S.Ct. at 2747, 125 L.Ed.2d at 416 (*employer must produce evidence of **a nondiscriminatory reason** to rebut the presumption* of discrimination created by the *prima facie* case).

(Emphasis added) Barefoot v Sundale Nursing Home, 457 S.E.2d 152, 160 (W.Va. 1995).  In the case *subjudice*, it is apparent that the jury concluded that the reason articulated for barring Ms. Calef from work was itself grounded in unlawful discrimination and thereby neither legitimate nor nondiscriminatory, under the facts of this case.

 The jury's conclusion is further illuminated when one realizes that the jury found, in response to Interrogatory No. 2, that Ms. Calef, on February 24, 2004, was able and competent to perform the essential functions of the job of "Pick up and Delivery ("P and D") Service Manager Level III."  Given this fact, any reasonable jury could have properly reached the conclusion that Steve Hickman and Lynn Angstadt's decision "that the plaintiff should be placed on leave . . . to permit the plaintiff's condition to improve and to prevent her injury from getting worse" was nothing save a, purely, unlawful "discriminatory reason."  *See* Document 241, 14.  This finding is further supported by the complete absence of any medical provider statement advising the Defendant FedEx that Ms. Calef was unable to work, on February 24, 2004.  It is, in fact, such patronizing and misinformed responses to non-disabling limitations which give rise to very the need for the "regarded as" protections of the HRA.

Furthermore, Defendant's reliance upon Stone is sorely misplaced.  In Stone, the defendant hospital placed Mr. Stone, an EMT and ambulance driver, in a temporary light duty position pending the outcome of an independent medical examination of his back, for which he purportedly was taking narcotic medications. Stone, 538 S.E.2d at 393-394.  The Court

concluded, under these facts that:

> Based on the right and duty of an employer to establish and maintain both a safe *and* non-discriminatory workplace, it seems clear to us that an employer may require an employee to work under temporary precautionary employment conditions and limitations, such as a "light duty" assignment, pending the results of an otherwise permissible inquiry or medical examination and employer assessment, if such temporary precautionary conditions ***are job-related***, consistent with business necessity, and in compliance with the duty of reasonable accommodation.

Stone, 538 S.E.2d at 397.  Initially, Defendant has not and cannot establish that barring Ms. Calef from work was job related.  As found by the jury, on February 24, 2004, Ms. Calef was performing all of the essential functions of her job.  Furthermore, Defendant did not offer any proper evidence to show that Ms. Calef's limitation constituted a "direct threat:"

> The employer's determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job.  This assessment shall be based on a reasonable medical judgement that relies on the most current medical knowledge and/or on the best available objective evidence.

77 CSR 1-4.8.  Instead of basing its decision "upon reasonable medical judgment that relies on the most current medical knowledge," Defendant simply left the decision to two decidedly non-medical persons, Lynn Angstadt and Steve Hickman.  Moreover, unlike the defendant hospital in Stone, the Defendant FedEx not only did not request an independent medical examination (IME), in short order, it categorically refused to respond to requests for such an IME from Ms. Calef's physician, so that she might return to work.  Plaintiff's Trial Ex. 32.  In fact, no medical evidence was offered by Defendant, at all, as support for its argument that Ms. Calef was a "direct threat."

Finally, the Defendant FedEx would not permit Ms. Calef to return to her prior position, even though she was performing all of the essential functions of her job, or any other FedEx Company position without first presenting a "full release" for her "original medical restrictions."

Plaintiff's Ex. 17 & 54.  As both Dr. Bowers and Ms. Calef explained, those restrictions have not changed since they were first imposed on February 16, 2004.  Accordingly, Ms. Calef was, contrary to defense claims, "prevented from returning to work" by the Defendant. Document 241, 14.  As a consequence, Defendant cannot find refuge or excuse in <u>Stone</u> for its unlawful discriminatory treatment of Ms. Calef.  Therefore, this Court should deny the Defendant's renewed motion for judgment as a matter of law.

**H. Ms. Calef's Back Pay and Front Pay Should Not be Terminated Because of any Purported Inability to Work.**

There is absolutely no evidence of record that Ms. Calef was unable, at any time, to perform all of the essential functions of her job.  It is only because the Defendant FedEx supplied misinformation as to the exertional requirements of that job to the STD claims processor, and thereby to Ms. Calef's physician, as well as to the LTD claims processor, that any opinion was ever rendered as to Ms. Calef's inability work.  And that inability to work was premised entirely upon the *ersatz* exertional requirements suppled by Defendant. See Plaintiff's Trail Ex.31 (25 pounds) & 34 (75 pounds).

Neither Ms. Calef's "Performance Expectation Plan" nor the Service Manager III job description, which according to the Defendant FedEx applied to Ms. Calef, contained any functional requirement, whatsoever, that she was unable to perform, at any time, as a result of her limitation.  Dr. Bowers testimony is clear and uncontroverted, Ms. Calef's limitation of lifting no greater than 20 pounds has remained the same from February 16, 2004, to date.

As for Defendant's re-asserted claim premised upon judicial estoppel, see Argument, D, *supra*.  For all of the foregoing reasons, this Court should deny the Defendant's renewed motion for judgment as a matter of law.

21

**I. The Verdict is Supported by the Evidence.**

Defendant has moved the Court for a new trial on the ground that the verdict is "contrary to the great weight of the evidence and a new trial is necessary to prevent a miscarriage of justice." Document 241, 17.  Other than those arguments previously articulated in its Memorandum no argument is made in support of a new trial,. The forgoing demonstrates that there is ample evidence of record to support the jury's verdict and that no miscarriage of justice has occurred.  Therefore, the Court should deny the defendant's motion for a new trial.

**J. The Jury Did Not Return an Answer to Interrogatory No. 7 Because it Found that No "Legitimate Non-Discriminatory Reason" was Articulated by the Defendant FedEx and Because Having so Found, it was Properly Instructed, Without Objection, to Find for Ms. Calef.**

As explained, *supra* at Argument E, it is not enough to articulate any reason for the adverse employment action taken, the Defendant has the burden of producing a "legitimate nondiscriminatory reason."Barefoot v Sundale Nursing Home, 457 S.E.2d 152, 160 (W.Va. 1995).  In the case *subjudice*, the jury concluded that the reason articulated for barring Ms. Calef from work was itself grounded in unlawful discrimination and thereby neither legitimate nor nondiscriminatory. Document 234, 3.

Furthermore, Interrogatory No. 6, which inquires whether the Defendant FedEx articulated a legitimate non-discriminatory reason for taking its adverse employment action against Ms. Calef, carries with it the following instruction: "If your answer to Interrogatory No. 6 is 'No,' please go to Verdict Form No. 1 and enter a verdict in favor of the plaintiff, Tammy L. Calef."  No objection was raised by the Defendant FedEx to the inclusion of this instruction in the "Special Interrogatories," prior to its submission to the jury. Document 234.  Moreover, no objection was raised by the Defendant in response to the Court's re-instruction on the operation

22

of Interrogatory No. 7 in relation to Interrogatory No. 6, after the jury forwarded its note about Interrogatories No. 7 and 8. Document 236.  Accordingly, as the jury could, consistent with the HRA, properly conclude that the reason articulated by Defendant was not a legitimate non-discriminatory reason,  and because the Defendant FedEx did not object to the "Special Interrogatory,"at issue, this Court should deny the Defendant's motion for a new trial.

**K. The Court Properly Instructed the Jury that the Defendant had a Duty to Accommodate Ms. Calef as a "Regarded As" Disabled Person, Although, in Point of Fact, the Jury Never Reached this Issue.**

Initially, it is curious that the Defendant would protest an instruction on an issue which was never reached by the jury, in the case *subjudice*.  The jury did not reach this issue because it found in response to Interrogatory No. 2 that Ms. Calef proved, by a preponderance of the evidence, that on February 24, 2004, [she] was able and competent to perform the essential functions of "Pick up and Delivery ('P' and 'D') Service Manager, Level III." Document 234, 1-2.  Accordingly, as all damages awarded to Ms. Calef were necessarily tied directly to the unlawful and discriminatory adverse employment action taken against her, and not because of Defendant's failure to accommodate her, there is no reason to even address this issue.  *See* Wilson v. Phoenix Specialty, __F.3d__, 2008 WL 186154 (4th Cir. 2004).

Furthermore, when confronted with the issue of whether an employer has a duty to reasonably accommodate a "regarded as disabled" employee, the West Virginia Supreme Court of Appeals will likely join the First, Third, Tenth and Eleventh Circuit in holding that an employer must offer reasonable accommodation to persons included within the definition of disabled because they were "regarded as"disabled.  *See*, Katz v City Metal Co.,Inc., 87 F.3d 26 (1st Cir. 1996); Williams v Philadelphia Housing Authority Police Department, 380 F.3d 751 (3rd Cir. 2004); Kelly v. Metalics West, Inc., 410 F.3d 670 (10th Cir. 2005); D'Angelo v

23

Conagra Foods, Inc., 422 F.3d 1220 (11th Cir. 2005).

Requiring such accommodation is consistent with the plain language of the HRA. Under the HRA, employment discrimination is prohibited against persons with disabilities: "No person shall, *on the basis of disability*, subject *any qualified person with a disability* to discrimination in employment." 77 CSR 1-4.1. As explained in <u>Stone</u> the definition of a person with a disability includes persons with an "impairment that does not substantially limit major life activities but is treated by another as being such a limitation." <u>Stone</u>, 538 SE2d at 399. Moreover, the express language of the HRA necessarily requires an employer to provide reasonable accommodation to such persons. *See* 77 CSR 1-4.4. Thus, pursuant to the HRA and its implementing regulations, the Defendant was required to make reasonable accommodation, in the event the jury found that Ms. Calef could not perform the essential functions of her job without such accommodation, as Ms. Calef is an individual with a disability under the HRA. Consequently, the Court properly instructed the jury on the duty to reasonably accommodate Ms. Calef.  Therefore, the Court should deny the Defendant's motion for a new trial.

**L. Demotion**

Defendant avers that the Court erred when it ruled *in limine* that Ms. Calef's October 2003 demotion was not relevant to her HRA disability discrimination claim and therefore was not to be introduced in the trial, *subjudice*.  The Defendant argues the demotion was relevant to show: (1) that Ms. Calef was disgruntled and did not desire to perform her job or any other job at the Clarksburg terminal for reasons unconnected with her injury and forced leave; and, (2) that while Ms. Calef was Terminal Manager, Chris Davis was assigned to deliver packages on a daily basis. Document 241, 19.

Initially, there is no evidence to support Defendant's speculative defense of a disgruntled

24

employee who did not desire to perform her job.  First, Mr. Ryan testified that Ms. Calef called

and congratulated him on his promotion, in October 2003. Ryan Depo., 49, line 6-11.  Second,

Mr. Ryan made clear that Ms. Calef, generally was performing her job:

> Q. Between Ms. Calef  – – whether it's by time, whether it's by rankings,
> whatever, between Ms. Calef and Mr. Davis, who was more senior?
>
> A. It depends in what regard.  I mean, if I had a question about the dock – – I
> mean, I think really either one of them.  P&D, I would go to Tammy.  She
> definitely knew the work area.

Ryan Depo., 41, line 10-16.  Third, Kyle Ryan's specific testimony is that Ms. Calef, as of

February 24, 2004, even with her injury, was completing her job duties because she was able to

write with her right hand.  Ryan Depo., 57, line 12-25, 58, line 1-6.  It is only after Ms. Calef's

injury that there is any documentation of any performance problems. *See* Plaintiff's Trial Ex. 8A

- 8D; *see also* Defendant's Trial Ex. 37.  Accordingly, there is simply no evidence to support

Defendant's speculative defense.

Equally unsupported is Defendant's argument that evidence of Chris Davis delivering

packages is relevant.  This holds true because the condition of the terminal was quite different in

January/February 2004 from its condition in April/May 2003 when Ms. Calef first became

Terminal Manager. When Ms. Calef took over responsibility for the terminal's operation, she

was forced to provide service with only 5 of the 9 contractor delivery drivers her predecessor had

employed – 55% of the contractor delivery drivers.  In addition, there was only one temporary

driver. *See* Document 133, 2-3 and Document 133, Burns Depo.96- 97; Calef Depo. 48-49.  By

contrast, as of  October 17, 2003, Ms. Calef was servicing her area with 5 permanent contractors

and 9 temporary drivers – a total of 14 delivery drivers. Document 133, 7 -8; Document 133, Ex.

22.  As a consequence, sometime in September or October 2003, Mr. Davis "could actually be a

service manager" because Ms. Calef had recruited sufficient delivery drivers to cover the routes. Document 133, Calef Depo., 64.  Accordingly, there is simply insufficient evidence to support Defendant's proposed defense that driving and delivering packages was an essential function of Ms Calef's job because of a shortage of drivers in January/February 2004.  Therefore, the Court should deny Defendant's motion for a new trial.

**M. Exclusion of Defendant's Exhibit 28**

Defendant contends that the Court committed "prejudicial error" when it excluded Defendant's Exhibit 28, an August 1, 2006 letter from defense counsel to plaintiff's counsel. Defendant avers that this letter was relevant to: (1) "show defendant's effort to re-employ plaintiff; and (2) rebut "the repeated claim that defendant was requiring a "full" release for the plaintiff to return to work. Document 241,19.  Initially, the Court properly excluded this document, pursuant to FRE 408.  In addition, the document is properly excluded as misleading and incomplete, pursuant to FRE 403 and the Rule of Completeness.  This letter, as originally sent, included numerous attachments, among them the May 11, 2006 letter authored by Steve Hickman in which he advised Ms. Calef that she could not return to FedEx work without "a release to return to work (including any limitations)." *See* Plaintiff's proposed exhibits, Ex. 61; *see also* Plaintiff's Trial Ex. 23.

Furthermore, Ms. Calef's counsel responded to this letter, on August 3, 2006, and referred Defense counsel to discovery documents Ms. Calef produced in which Dr. Bowers reiterated Ms. Calef's 20 pound lifting limitation and in which the Hartford Insurance Company determined that Ms. Calef retained the residual functional capacity to perform her Service Manager III job.  In addition, Ms. Calef's counsel advised defense counsel that: "if FedEx requires yet another medical statement that Ms. Calef is not to lift more than 20 pounds please so

advise." Plaintiff's Proposed Ex. 61. No such request for an additional medical statement was ever forthcoming from defense counsel. Therefore, pursuant to FRE 408 and Rule 403, as it relates to misleading the jury, the Court properly excluded this document. Moreover, assuming its admission, the attachments to Defendant's Proposed Exhibit 28, as well as, the August 3, 2006 correspondence of Ms. Calef's counsel should, pursuant to the Rule of Completeness, have been admitted, thereby foreclosing the misleading evidentiary points Defendant sought to submit to the jury. Accordingly, Defendant suffered no prejudice through exclusion of its Exhibit 28.

**N. Chris Davis Deposition Excerpts.**

Defendant avers that the "Court refused, *sua sponte*, to permit defendant to *read* sections of the testimony of Chris Davis from his deposition." Defendant avers that it should have been permitted to "read" these deposition excerpts as a form of rehabilitation subsequent to Ms. Calef's purported "reading" of "certain pages" of the deposition. Defendant further avers that it should have been permitted to "read" these deposition excerpts as a "Prior Consistent Statement." Deocument 241, 20.

Initially, the Court did not raise this issue *sua sponte*. The issue was brought to the Court's attention by counsel. Moreover, Ms. Calef did not simply "read" deposition excerpts to the jury. Instead, she impeached Mr. Davis with a prior inconsistent statement from his deposition, in strict conformity with FRE Rule 801(d)(1)(A). Second, no Rule of procedure or evidence would permit Defense counsel to simply read Mr. Davis' deposition testimony into evidence. Mr. Davis was available, therefore, F.R.Civ. P., Rule 32(a)(3), could not be satisfied, under the circumstances. Third, as Ms. Calef's counsel observed at the side bar on this issue, Defendant did not seek to rehabilitate Mr. Davis' testimony with a statement made *prior* to the statement with which he was impeached. Rather, Defendant sought rehabilitation through use of

27

a later made statement.  However, even if Defendant did not seek to rehabilitate with a later made

statement, counsel could not simply read such testimony into the record.  Instead, the Rules of

Evidence would have required proper rehabilitation through Mr. Davis' trial testimony by use of

any purported prior consistent testimony. Accordingly, there was no error in refusing to permit

Defense counsel to simply read portions of Mr. Davis' deposition testimony into the record.

Therefore, this Court should deny the Defendant's motion for a new trial.

**O. Kyle Ryan's Hearsay Statements to Steve Hickman.**

Defendant avers that the Court should have permitted Steve Hickman to testify, not only

to hearsay, but double hearsay: "Mr. Ryan reported that the plaintiff could not use her left arm,

had a cast on her arm and had told Mr. Davis that she could not touch a package or type."

Document 241, 20.  Defendant provided Mr. Ryan's deposition testimony to the jury.  Any such

purported reports made by Mr. Ryan to Mr. Hickman should have been offered through Mr.

Ryan's deposition testimony.  Therefore, the Court did not commit error.

Furthermore, Defendant did not timely draw the Court's attention to Defendant's theory

that such statements were not offered for the truth of the matter asserted.  Thus, any such

purported basis for admission of the subject testimony was waived.  Therefore, the Court should

deny Defendant's motion for a new trial.

**P.  Defendant's Decision**

Defendant complains that the Court interrupted his cross examination of Ms. Calef in

which it employed Ms. Calef's personal notes, Defendant's Trial Ex.1.  Document 241, 21. In a

side bar, the Court explained that the rule of completeness would permit submission of other

personal notes taken by Ms. Calef.  Defendant avers it was prejudiced because it was forced to

choose between opening the door to introduction of Ms. Calef's other personal notes and not

28

introducing the exhibit, at issue.  Document 241, 21.

Initially, it should be noted that Defendant's Trial Ex. 1 was attached as an Exhibit to Ms. Calef's personal statement to the FedEx Diversity and EEO Office. *See* Plaintiff's Proposed Ex. 28.  Accordingly, the Rule of Completeness, even construed with exceptional narrowness, would permit submission of the notes to which this Exhibit was attached. Furthermore, Ms. Calef would have been able to submit additional contemporaneous notes related to the actions taken against her by the Defendant as it was her contention, that she was removed from the OPS college, and subjected to other adverse treatment, in an effort to make her quit her job.

Finally, it was Defendant's decision to withdraw its Exhibit 1.  The Court did not prohibit its introduction.  Therefore, if there was any error, it was Defendant's strategic error.

**Q. Plaintiff's Exhibit 30.**

Defendant claims that the Court erroneously admitted Plaintiff's Exhibit 30.  Document 241, 21.  Exhibit 30 consists of computer screen printouts of "diary notes" detailing communications between the FedEx STD Plan paper processor, GatesMcDonald, and the FedEx Human Resources Compensation and Benefits Office.  These diary notes indicate that it was the FedEx Human Resources Department (HR), and not GatesMcDonald, independently, which certified Ms. Calef as disabled.  *See* Plaintiff's Trial Ex. 30A-30E.

Initially, the subject "diary notes" were produced by the Defendant FedEx in discovery from records maintained by it.  This fact is made certain by the "bates numbering" affixed to each of the diary notes - FXG/Calef 21109, 21107, 21105, 21102, 21099. Plaintiff's Trial Ex.30A-30E.  Accordingly, these "diary notes" are *prima facie* authentic, pursuant to Rule 901(4).  In addition, these "diary notes" are party admissions of a FedEx agent, pursuant to FRE 801(d)(2)(c) and (D), as "GatesMcDonald provides case management services and claims

administration services only for FedEx Ground Short-term Disability Plans: "[d]etermination of and entitlement to benefits and payment of benefits is the sole decision of FedEx Ground." *See* Plaintiff's Trial Ex. 29.  Finally, Ms. Gray testified as to the identity of the GatesMcDonald personnel referenced in the "diary note" entries and further testified that all of the information contained within said "dairy notes" was conveyed to her in communications from GatesMcDonald.  Accordingly, the Court properly admitted this evidence.  Therefore, the Court should deny Defendant's motion for a new trial.

**R. Carolyn Lyle Testimony**

Defendant avers error in the Court's admission of Carolyn Lyle's lay opinion testimony. Document 241, 22.  Ms. Lyle's testimony, however, was properly admitted pursuant to FRE 701. Generally, Rule 701 permits the introduction of lay testimony in the form of opinions or inferences if such testimony is (1) rationally based upon the *perception* of the witness; and, (2) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue.  *See generally*, U.S. v Perkins, 470 f.3d 150, (4th Cir 2006).   With particular reference to discrimination cases, "Courts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony . . . when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's *policies and practices*.  Gossett v State of Oklahoma ex rel. Board of Regents for Langston University, 245 F.3d 1172 (10th Cir 2001)(permitting nursing school instructor who was also member of admissions committee to opine that "It is my opinion that Marty Gossett was discriminated against based upon his gender").  Relying on this principle, in Slayton v Ohio Department of Youth Services, 206 F.3d 669, 675-677 (6th cir 2000), the Sixth Circuit found that lay opinion testimony was properly admitted because the opinion was expressed through application of the

defendant's policies.

Carolyn Lyle's testimony satisfied Rule 701's twin requirements that the lay opinion be: (1) rationally based upon her *perception*; and, (2) helpful to a clear understanding of the her testimony or to the determination of a fact in issue.  First, Ms. Lyle's testimony is based upon her own perception in two ways.  Her position as the Senior Manager of the Defendant's EEO Office of Diversity provided her with the opportunity to not only personally observe and experience the defendant's policies and processes, but to develop and implement those policies and processes, including the Defendant's HREA processes, at issue.  Moreover, Ms. Lyle personally applied the internal policies and processes, at issue, because she was charged by the Defendant with the obligation of investigating employee complaints of discrimination, including those of disability discrimination under the FedEx HREA processes.

Furthermore, Ms. Lyle personally investigated Ms. Calef's complaint, in accordance with her duties as the Senior Manager of the Defendant's EEO Office of Diversity.  In addition, Ms. Lyle's investigation was done in accordance with the Defendant's HREA policies and processes.

After conducting an investigation in accordance with the Defendant's policies and processes, Ms. Lyle perceived, based upon the employment actions taken against Ms. Calef, that the Defendant's HREA processes were not followed by Mr. Hickman when he sent Ms. Calef home on FMLA and STD.  Accordingly, based upon these perceptions, Ms. Lyle opined that she was concerned that Ms. Calef, contrary to the Defendant's policies and processes, was perceived as being disabled.  Moreover, Ms. Lyle as the FedEx EEO corporate officer responsible for implementing and deciding the FedEx HREA processes necessarily had first hand knowledge of the essential functions of FedEx jobs, including the Service Manager position held by Ms. Calef. Therefore, Ms. Lyle's opinion testimony is rationally based both upon her knowledge of the

31

Defendant's policies and processes and her investigatory perceptions.

Second, Ms. Lyle's testimony was helpful to a determination of a fact in issue.  Her testimony was helpful because she imparted to the jury the workings of the Defendant's EEO Office of Diversity policies and processes that should have been employed by Mr. Hickman in his determination of whether Ms. Calef might continue in her Service Manager position even though her hand was injured.  Such testimony was helpful because the average juror is not likely to possess knowledge of the Defendant's EEO policies and processes.  In addition, Ms. Lyle's testimony was helpful because it permitted the jury to determine whether Mr. Hickman complied with the Defendant's own HREA policies and processes.

Moreover, the Defendant's declaration that Ms. Lyle's testimony is not helpful because it uses terms that have a special meaning in the law is of no moment.  The same objection was rejected in Slayton because the opinions expressed in the term at issue, "sexual harassment," was not based upon Title VII, but rather upon the defendant's own policy language.  Slayton, 206 F.3d at 677.  Such was the case with Ms. Lyle's trial testimony.

Furthermore, the Court's *in limine* ruling admitting Ms. Lyle's testimony is entirely in keeping with the Fourth Circuit's opinion in Perkins because Rule 704(a) abolished the "so-called ultimate issue rule," thus, "the touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury." Perkins, 470 F.3d at 157.  As a consequence, the trial court's task "is to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion." Perkins, 470 F.3d at 157-158.  Ms. Lyle's testimony was helpful opinion testimony which embraced an ultimate fact premised upon the Defendant's own policies and processes, without stating a legal conclusion.  Thus, Ms. Lyle's testimony was properly admitted, pursuant to F.R.E., Rule 701.  Therefore the Court

should deny the Defendant's motion for a new trial.

**S. Jury Instruction - Temporary Condition**

Defendant sought an instruction stating that a temporary condition is not a disability. Document 241, 23. Such an instruction is contrary to West Virginia law. *See* Syl. pt. 3, Haynes v. Rhone Polenc, 521 S.E.2d 331 (W.Va. 1991) (A "qualified person" protected by the HRA includes a person who is temporarily unable to perform the requirements of the person's job); *see also* Stone v. St. Joseph's Hospital, 538 S.E.2d 389, 404, n. 21, *citing* Haynes, (acknowledging West Virginia's strong and frequent divergence from federal precedent). Thus,  the Court did not err in refusing the instruction.  Therefore, the Court should deny the Defendant's motion for a new trial.

**T. Instruction - Risk of Injury to Self**

Defendant sought an instruction stating that a risk of injury to the plaintiff employee was a legitimate reason to remove the plaintiff employee from the workplace. Document 241, 23.  In support of this instruction, Defendant cites to Syl. pt. 2 & 3, Davidson v. Shoney's Big Boy Restaurant, 380 S.E.2d 232 (W.Va. 1989).  The current version of the HRC regulations was the apparent source for the Court's Charge on this issue:

> (g) "Able and Competent"
> Able and competent means that, with or without reasonable accommodation, an
> individual is currently capable of performing the work and can do the work
> without posing a direct threat of injury to the health and safety of other employees
> or the public.

Document 233, 9, *see also* 77 CSR 1-4.3. Defendant offered no requisite evidence to support an instruction pursuant to a risk of health and safety under the current state of HRA law.  *See* 77CSR 1-4.8.  Moreover, Defendant did not even proffer evidence sufficient to satisfy the 1989 Davidson standard for such an instruction.  Thus, the Court did not err in refusing the instruction

offered by Defendant.  Therefore, the Court should deny the Defendant's motion for a new trial.

**U. "Regarded As" - Objective Test.**

Defendant claims error in the Court's instruction as to the Objective test of whether it "regarded" Ms. Calef as disabled.  This language of the Charge was taken from Stone.

> [T]he Act protects persons who are discriminatorily *treated* as having a substantially limiting impairment.  *W.Va. C.S.R.* 77-1-2.8. This component of the Act's prohibitions is an objective test that does not focus on the subjective motivation behind the behavior in question, but on the behavior itself.

Stone, 538 S.E.2d at 407, n. 25.  Thus, the instruction is a correct statement of law.  Therefore, the Court should deny the Defendant's motion for a new trial.

**V. Court's Instruction Regarding Ms. Calef's Placement on STD and LTD.**

Defendant objects that the Court gave an instruction to the jury which provided that it might consider the fact that "plaintiff was awarded short term and long term disability benefits in determining whether the plaintiff was regarded as disabled." Document 241, 24.  **NO such instruction was given**.  The Instruction as given follows, verbatim:

> In making this determination, the fact that Ms Calef **was placed on** short term and long term disability benefits does not necessarily mean that FedEx regarded Ms. Calef as being disabled.  The definition of a person with a disability under the West Virginia Human Rights Act is different than the definition used in **placing** Ms. Calef on short term and long term disability benefit programs.  Like all other evidence that has been admitted, you may consider this fact and give it whatever weight, if any, you think it deserves.

Document 233, 15.   There is no error in this instruction, and the Defendant has pointed to none.

Therefore, the Court should deny the Defendant's motion for a new trial.

**W. Refusal to Instruct Jury that GatesMcDonald and/or Hartford Perceptions and Opinions May not Be Imputed to the Defendant.**

Defendant argues that the Court erred in not instructing the jury that the perceptions and

34

opinions of GatesMcDonald and/or Hartford may not be imputed to the Defendant. Document 241, 25.  Initially, such an instruction is not supported by the evidence as there is no question but that GatesMcDonald is an agent of the Defendant FedEx. *See* Plaintiff's Trial Ex. 29 (GatesMcDonald provides case management and claims administration services only for FedEx . . . Determination of and entitlement to benefits . . .is the sole decision of FedEx). Moreover, Plaintiff asserted at trial that the Defendant misled these two entities with inaccurate and false information as to the exertional requirements of the Service Manager III position.  Thus, the Court did not err in refusing such an instruction.  Therefore, the Court should deny the Defendant's motion for a new trial.

**X. Reasonable Accommodation Instruction.**

Defendant avers that the court's instruction on reasonable accommodation was erroneous. Document 241, 25.  However, as the jury determined that Ms.Calef was able to perform her job without accommodation, even assuming *arguendo* that there was any error in the instruction, any such error was necessarily harmless.  Furthermore, the instruction as given was accurate and explained that Ms. Calef must prove by a preponderance of the evidence, that FedEx was required to make reasonable accommodation, by proving each of the six Skaggs factors. Document 233, 16; see also Syl. pt 2, Skaggs, 479 S.E.2d at 568.

Moreover, the Court's instruction on the interactive process was also derived directly from Skaggs. *See* Skaggs, 479 S.E.2d at 575, 577-578.  Thus, the instruction is merely a proper and accurate statement of West Virginia law.  Therefore, the Court should deny the Defendant's motion for a new trial.

**Y. Magnitude and Breadth Instruction**

Defendant avers that the Court erred in instructing the jury that "the magnitude and

breadth of the work-related limitations or restrictions that FedEx found to be appropriate for Ms. Calef are factors [that you], the jury, may consider in determining whether she suffered an adverse employment action." Document 241, 27 *citing* Document 233, 19.  This language too is taken directly from relevant West Virginia case authority. *See* <u>Stone</u>, 538 S.E.2d at 406. Therefore, the Court should deny the Defendant's motion for a new trial.

**Z. Refusal to Instruct that Lifting 25 Pounds was a Judicial Admission as to the Functional Requirements of the Service Manager Job, Both Dock and P&D.**

Defendant avers that the Court erred in refusing to instruct the jury that Ms. Calef's Complaint reference to the 25 pound lifting requirement included within the Service Manager II job description, which was forwarded to Ms. Calef's physician by way of the Defendant, was a judicial admission. Document 241, 27.  The inclusion of the language from the Service Manager II job description within the Complaint does not qualify as an unqualified judicial admission and was based on false information conveyed by the Defendant FedEx.  *See* discussion, *supra*, at Argument C.  Thus, the Court did not err.  Therefore, the Court should deny the Defendant's motion for a new trial.

**AA. The Court's Refusal to Give Defendant's Proposed Instruction No. 13.**

The Defendant avers that the Court erred in not giving its proffered Instruction No. 13. The Defendant's instruction is misleading, as written.  First, as the jury found Ms. Calef able to perform the essential functions of her job without accommodation, any such purported error in refusing the instruction is harmless.  Second, the proffered instruction is inconsistent with West Virginia Law.  In <u>Skaggs</u> the Court specifically observed in overruling <u>Coffman, v. W.Va. Bd. of Regents</u>, 386 S.E.2d 1 (W.Va. 1988) that:

> More importantly, ***whether an accommodation is labeled as an adjustment to job duties or as the creation of a new position (unique to the plaintiff) is completely***

36

*irrelevant* to determining whether an employer met its duty of accommodation. **We cannot begin to draw a meaningful line between what is a simple restructuring of duties and what is the creation of a new job.** In some senses, any modification of duties would create a new position unique to the person with a disability. **In addition, and most importantly, even if an accommodation could be and is characterized as creating a new position, we do not categorically rule that out as within the possible accommodations** that the Human Rights Act might require an employer to make in an appropriate case. Indeed, categorically excluding any strategy from the list of accommodations that can be required of an employer must be highly disfavored. The Human Rights Act dictates that decisions must be made on a case-by-case basis and focus on identifying means that would permit qualified persons with a disability to continue their employment and that would meet an employer's needs without imposing upon it an undue hardship. To the extent that *Coffman* is inconsistent with any of the foregoing, it is expressly overruled.

Skaggs, 479 S.E.2d at 579. Accordingly, a categorical statement that a Defendant need not create any job to accommodate an employee, such as that contained within Defendant's Instruction No. 13, is contrary to Skaggs. Thus, there was no error in refusing such an instruction.

As for Defendant's failure to advise of open positions that were available. Ms. Calef proved that such open positions existed. *See* Plaintiff's Demonstrative Ex.68.10. Accordingly, this aspect of the Defendant's motion is simply "make weight." Therefore the Court should deny Defendant's motion for a new trial.

## BB. Damages.

### 1. Collateral Source.

Defendant complains that the Court committed error in holding that the STD and LTD benefits received by Ms. Calef under the FedEx Plans were a collateral source. The Court, however, correctly observed that under West Virginia law, one must look not only to a benefit source but to its character, as well. Document 180, 5, *citing* Powell v. Wyoming Cablevision, Inc., 403 S.E.2d 717, 725 (W.Va. 1991). Through analysis of the character of an employee benefit, the West Virginia Supreme Court of appeals has concluded that workers compensation

37

benefits and unemployment compensation benefits are collateral sources.  Jones v. Laird Foundation, Inc., 195 S.E.2d 821 (W.Va. 1973); Orr v. Crowder, 315 S.E.2d 593, 610 (W.Va. 1984).

Applying this maxim, as the West Virginia Court had yet to address the precise issue at hand, the Court looked to various federal courts which had viewed the question of employee benefits, similarly, in the context of benefits derived in whole or in part from an employer tortfeasor. Document 180, 5.  After a survey of such cases, the Court reasoned that "in determining whether a benefit plan that is wholly or partly funded by the tortfeasor is a collateral source, the ultimate inquiry remains whether the tortfeasor established the plan as a prophylactic measure against liability." Document 180, 5 *citing* Davis v. Odeco, 18 F.3d 1237, 1244 (5th Cir 1994).  And after careful application of the five Allen factors, the Court concluded that the benefits, at issue, were not a prophylactic measure against liability (for purposes of indemnification) but rather an additional form of compensation (fringe benefits).  Document 180; *see also*, Allen v. Exxon Shipping Co., 639 F.Supp. 1545, 1547-48 (D.Me.1986).  Accordingly, the Court correctly and properly held that the benefits, at issue, were a collateral source. Document 180, 12-13.  The Court's holding is further buttressed by the Defendant FedEx's characterization of these benefits as The FedEx Hidden Paycheck. *See* Document 133, Ex. 5 & 6.

Furthermore, the reasoning employed by the Court in relation to the STD and LTD plan benefits applies with equal force to its trial ruling that the medical, dental and vision benefits received by Ms. Calef constitute a collateral source.  Thus, there was no error and this Court should deny the Defendant's motion for a new trial.

**2. Dr. Hawley's Opinion as to the Costs of Law School.**

Defendant complains that the Court ought not to have permitted Clifford Hawley, Ph.D.

to opine that the costs of Ms. Calef's law school attendance are an element of her damages. Document 241, 29.  Initially, Dr. Hawley testified as to the manner in which he determined Ms. Calef's law school costs.  In addition, he testified that Ms. Calef's attendance at law school significantly reduced the amount of damages for which the Defendant might ultimately be liable.

As Ms. Calef's law school attendance significantly reduced the amount of damages for which Defendant was liable, it ought not have the benefits of an offset for the expenditures made by Ms. Calef in pursuing her diploma.  Furthermore, in <u>Kerns v. Bucklew</u>, 357 S.E.2d 750, 752 (W.Va. 1987) the HRC awarded the claimant all costs associated with further education.  Thus, the Court correctly overruled the Defendant's objection to Dr. Hawley's testimony on the issue. Therefore, the Court should deny the Defendant's motion for a new trial.

### 3. Front Pay

Defendant complains that the Court ruled *in limine* that the front pay issue was a jury issue, under federal law. Document 241, 29.  The Court, however, correctly reasoned, in accordance with <u>Hanna v. Plummer</u>, 380 US 460, 472-473 (1965) that there is no federal procedural uniformity to protect, on the issue. Document 180, 20-22.  And, therefore, application of West Virginia law would not be inconsistent with the federal interest of maintaining a cohesive, uniform system for the administration of justice. Document 180, 21-22.  Moreover, the Court properly considered the importance of promoting uniformity in HRA cases, regardless of whether filed in state or federal court. Document 180, 22.  Thus, the Court correctly determined, pursuant to both state and federal law, that the issue of front pay should be submitted to the jury.

Moreover, unlike in <u>Duke v Uniroyal, Inc.</u>, 928 F.2d 1413 (4th Cir 1991) and <u>Cline v Wl-Mart Stores, Inc.</u>, 144 F.3d 294, 307 (4th Cir. 1998), Ms. Calef's front pay damages were established to a reasonable degree of economic certainty through the testimony of Clifford

39

Hawley, Ph.D.  Accordingly, said damages satisfied all requisite legal standards for future damage awards.  Furthermore, proper application of the two part test of <u>Chauffers Teamsters and Helpers Local No. 391 v. Terry</u>, 494 U.S. 558 (1989) to a state cause of action for discrimination, such as the HRA, necessarily yields the conclusion that the front pay damages, at issue, are legal not equitable.  *See* e.g., <u>Gallagher v Wilton Enterprises, Inc.</u>, 962 F.2d 120 (1st cir 1992); *compare*, <u>Wildman v Lerner Stores Corp.</u>, 771nF.2d 605 (1st Cir. 1985), *as cited in* <u>Duke v Uniroyal, Inc.</u>, 928 F.2d 1413 (4th Cir 1991).  Thus, pursuant to the protections of the Seventh Amendment, to the Constitution, the Court properly submitted the issue of Ms. Calef's front pay damages to the jury.  Therefore, the Court should deny the defendant's motion for a new trial.

### 4. Reinstatement as the Preferred Remedy

Defendant avers that the Court should have ordered reinstatement rather than permitting the jury to award significant front pay damages. Document 241, 30.  First, contrary to the Defendant's claims, it did not make any offers of reinstatement to Ms. Calef, prior to September 20, 2007.  This holds true because, before September 20, 2007, no specific position was ever identified by the Defendant. *See* Plaintiff's Proposed Ex. 61 & 68.

Furthermore, the Court could not properly order reinstatement in this case as the great weight of evidence indicates that Ms. Calef would have been required to produce a release which included a release for all of her limitations, as "that was the intention all along." *See e.g.*, Plaintiff's Trial Exhibit, 17, 54 & 23.  As Ms. Calef remains unable to lift greater than 20 pounds, pursuant to Dr. Bower's testimony, the requirement of a full release prior to reinstatement is an impossibility.  Accordingly, the instant case is not a case in which reinstatement is possible.  Thus, the Court correctly placed the question of front pay before the jury.  Therefore, the Court should deny defendant's motion.

**5. Mitigation of Damages.**

Defendant avers that the Court committed error when it ruled, pursuant to <u>Orr v. Crowder</u>, 325 S.E.2d 593, 609 (W.Va. 1084) that as the Defendant maintained that Ms. Calef was still its employee, she had no obligation to mitigate damages. Document 241, 20. However, assuming *arguendo* that the Court's reliance upon <u>Orr</u> was in error, any such error was harmless as Defendant could not and did not even attempt to proffer any evidence that there were comparable positions available within the relevant geographic area for which Ms. Calef would have been qualified. *See* Syl. pt 7 <u>Orr v. Crowder</u>, 325 S.E.2d at 596.

Furthermore, before the Court had ruled on the issue of mitigation the Defendant withdrew its vocational expert, the only witness who might possibly have satisfied the Defendant's burden. Thus, there could be no actionable error in the Court's reliance upon <u>Orr</u> for its holding that Ms. Calef had no obligation to mitigate her damages. Furthermore, it is obvious that Ms. Calef, in fact, conducted an exhaustive job search. *See* Plaintiff's Demonstrative Ex. 55. Therefore, the Court should deny the Defendant's motion for a new trial.

### III. CONCLUSION

For the foregoing reasons Ms. Calef respectfully requests this Honorable Court to deny the Defendant's Motion for Judgment as a Matter of Law or, in the Alternative a New Trial. Ms. Calef further requests such other and additional relief as this Court may deem appropriate in the interests of justice.

<table>
<tr><td>

  /s/ *Georgia Lee Gates*      

Georgia Lee Gates #8547
310 Adams Street
Fairmont, West Virginia 26554
(304) 367-1137
georgialeegates@AOL.com
</td><td>

Respectfully submitted,
Plaintiff by counsel
</td></tr>
</table>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

TAMMY L. CALEF,
      Plaintiff,

V.                         CIVIL ACTION NO:  1:06-CV-47

FEDEX GROUND PACKAGE SYSTEM, INC.
      Defendant.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 4th day of February, 2008, the foregoing

**"Plaintiff's Memorandum in Opposition to Defendant's Renewed Motion for Judgment as**

**a Matter of Law Or, in the Alternative, for a New Trial**" was electronically filed with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record:

April Morgan Hincy, Esquire
Eckert Seamans Cherin & Mellott
2400 Cranberry Square
Morgantown, WV  26508-9209
Fax:  304-598-1181
Email:  ahincy@eckertseaman.com

Joseph P. McHugh, Esquire
FedEx Ground Package System, Inc
1000 FedEx Drive
Moon Township, PA  15108
Fax:  412-859-5450
Email:  joseph.mchugh@fedex.com

John Myers, Esquire
Christina I. Kepplinger, Esquire
Eckert Seamans Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Fax:  412-566-6099
Email: jmyers@eckertseaman.com
Email:ckepplinger@eckertseaman.com

/s/ _Georgia Lee Gates_
Georgia Lee Gates #8547
310 Adams Street
Fairmont, WV  26554
(304) 367-1137
Fax: (304) 367-1500
georgialeegates@AOL.com

42